(Decided 21st January, 1876.)

## MICHAEL RODDY vs. OWEN FINNEGAN.

*Action for an alleged illegal arrest—Admissibility of Evidence— When a Witness will be held to have waived his Privilege of declining to answer a question that might subject him to a Criminal Prosecution—Right of a Policeman to arrest without Warrant—Inadmissible evidence—In respect of the duty of the Board of Police Commissioners of the City of Baltimore, and the Police officers appointed by them—Prayer and instruction to the Jury—Obstruction of a Police officer in the discharge of his duty—Liability of a Police officer to severe Penalties for improper conduct.*

B. was ordered by A. to do an act, in doing which he violated a City Ordinance, for which A. was arrested. The officer making the arrest was sued by A. for an illegal arrest. A. having testified in his own behalf and stated

that he gave the order, was questioned on his cross-examination, as to what was his intention in giving it. On objection to the question, it was HELD:

1st. That assuming the order to have been of doubtful character, it was competent to prove by A. that when he gave it he intended or contemplated a violation of the ordinance by its execution through B.; or that it was to be carried into effect *non obstante* the ordinance; for the purpose of showing his illegal complicity with B. in the transaction; or that such was not his intention, as the case might be.

2nd. The privilege that a witness has, of declining to answer a question that might subject him to a criminal prosecutions is the privilege of the witness, and not of the party. Where he is both party and witness, he must be held on his cross-examination as waiving the privilege as to any matter about which he has given testimony-in-chief. Having testified to a part of the transaction in which he was concerned, he is bound to state the whole.

An ordinance of the City of Baltimore, prohibited all persons from driving or placing any horse attached to a wagon upon any of the footways of the City. A. having purchased a load of hay from B., ordered the latter to deliver the hay at the window of his stable loft, and while it was being so delivered A. was arrested for a violation of the ordinance. In an action for an illegal arrest brought by A. against the officer making the arrest, it was HELD:

1st. That if A. gave the order for the delivery of the hay at the window, and it could not be delivered without driving over the pavement; or if he intended the wagon to be driven over the pavement and B. so understood the the order; or if A. stood by and made no objection thereto, but acquiesced in the act as done in pursuance of his direction, he was guilty of a violation of the ordinance, and the officer was justifiable in making the arrest, if he used no more force than was necessary to make the arrest and detention for hearing, effectual.

2nd. That finding the parties in the act of violating the ordinance, the officer was not only justified in making the arrest and detaining the offender for a hearing, but his duty required him to do so upon his responsibility as a police officer, without obtaining a warrant from any other quarter.

3rd. That the fact that A. had, prior to the unloading of the hay, and had since, unloaded other hay into his stable loft whilst the horses and wagon containing the same were placed upon the footway of the street for that purpose, could not be used to show his intention in the matter in question.

The Board of Police Commissioners of the City of Baltimore, and the police officers appointed by them are State officers, but they exercise the police power of the City of Baltimore, and it is their duty to enforce all the laws and ordinances of the city, which can be enforced by the police.

They have the power to prevent the commission of crime, and to arrest and detain offenders for a hearing without warrant, wherever other police officers can do so by the common law, that is, where the offence, whether by common law, by statute, ordinances of the city, or police regulations, is committed within their view.

A prayer is properly rejected, which is calculated to mislead the jury by its selection and collocation of specific items of testimony prominently detailed, totally ignoring other material facts.

If a party not concerned in the violation of the law, obstructs a police officer while the latter is inquiring into the circumstances for the purpose of enabling him to ascertain the offending party, such conduct is unlawful and justifies the officer in arresting him.

Police officers, like other officers of the law, are not to be maltreated in the faithful discharge of their duty, free from malice, ill-will, oppression, or the use of any unnecessary force, but are entitled to aid and assistance.

If they fail in the performance of duty, or their conduct proceeds from a spirit of oppression or annoyance, they place themselves beyond the immunity afforded by the law, and become offenders themselves, and are liable to the severest penalties.

APPEAL from the Court of Common Pleas.

This was an action of trespass *vi et armis*, brought by the appellee against the appellant, for an alleged assault and battery. The defendant was a police officer of the city of Baltimore, and justified the acts complained of as having been done in pursuance of his duty as such officer.

*First Exception.*—Stated in the opinion of the Court. The ordinance referred to in the exception, among other things provides that " no person shall drive, lead or place any horse or beast of burden, or any horse attached to a cart, dray or other carriage, laden or unladen, on any of the footways of the city, and every person offending in any or either of the cases aforesaid, shall forfeit and pay for every such offence, a sum not exceeding twenty dollars ; provided that nothing herein contained shall prevent any person from riding, driving or leading across any of the footways, any horse or beast of burden, into or out of any lot or tenement."

*Second Exception.*—The counsel for the plaintiff, in order to show malice on the part of Roddy towards Finnegan, having offered evidence by Malachi Leonard, that Roddy had, on various occasions, arrested Finnegan, and employés of his ; the counsel for the defendant, in order to rebut any presumption of malice that might arise from this testimony, proposed to ask the witness Roddy the following question : "Whether Mr. Riley, who lives next to Finnegan's stable, on Bartlett street, had ever complained to him in his official capacity, prior to this occurrence, that Finnegan was in the habit of placing horses on the footway of his, (Riley's) dwelling-houses, while unloading hay into the stable, and claimed protection from him as an officer." To which question the counsel for the plaintiff objected, and the court sustained the objection. The defendant excepted.

*Third Exception.*—Waived.

*Fourth Exception.*—The testimony being closed, the defendant offered the following prayers :

1. If the jury shall believe from the evidence in the cause, that the plaintiff pointed out to the witness Curran, the window through which the hay was to be put into the stable-loft, and told him to put the hay into the stable-loft through that window, and shall further find that the witness Curran ordered the hay to be put into the stable-loft through that window, and that it was so done; and shall further find that the said hay could not be put into the said stable-loft through the said window, so pointed out, unless the wagon containing the same, and the horses hauling the same, were placed upon the footway of Bartlett street for that purpose ; and shall further find that the said horses and wagon were so placed, for said purpose, and were so found by the defendant when he came upon them as a police officer of Baltimore city, then they are instructed that the defendant, as such police officer, was justified in arresting the said plaintiff, and that he was

further justified in using all the necessary means and force to make said arrest effectual; and if they further find, that the defendant used no more than the necessary means and force to make said arrest effectual, their verdict must be for the defendant.

2. If the jury shall believe from the evidence in the cause, that when the plaintiff showed the witness Curran, where he wanted the hay unloaded, and pointed out the window through which he wanted it put into his stable-loft, that he *intended* the horses and wagon containing the same, should be placed upon the footway of Bartlett street, for the purpose of unloading the hay.; and if they shall further find that the said horses and wagon were so placed for said purpose, and that the defendant, whilst a police officer of Baltimore city, so found them when he came upon them, then they are instructed that the defendant, as such police officer, was justified in arresting the plaintiff, and was further justified in using all the necessary means and force to make said arrest effectual; and if they further find, that he used no more than the necessary means and force to make said arrest effectual, their verdict must be for the defendant.

3. That for the purpose of finding the intention spoken of in the defendant's *second prayer*, the jury are at liberty to take into consideration the fact, if they shall find such fact, that the plaintiff, had, prior to the unloading of the hay in the manner spoken of in the defendant's *first prayer*, and has since unloaded other hay into his stable-loft, whilst the horses and wagon containing the same were placed upon the footway of Bartlett street for that purpose.

4. If the jury shall believe from the evidence in the cause, that the defendant whilst a police officer of Baltimore city, came upon horses attached to a wagon laden with hay, which had been driven and placed upon the footway of Bartlett street, in front of the plaintiff's stables, and of the witness, Riley's, dwelling-house, for the pur-

pose of unloading the hay into the plaintiff's stable, and that said horses and said wagon, were standing upon said footway of said street, in front of said stable and said dwelling-house, when the defendant came upon them, and that said hay was being unladen into said stable; and shall further find, that whilst the said defendant was ordering the driver of said horses and wagon to quit unloading the said hay, and to remove his horses and wagon from the said footway, if they shall find that he did so order, that the plaintiff told the driver to continue putting in the said hay, and not to move his horses and wagon, then they are instructed that the defendant, as such police officer, was justified in arresting the plaintiff, and was further justified in using all the necessary means and force to make such arrest effectual; and if they further find, that he used no greater means and force than were necessary to render said arrest effectual, they must find a verdict for the defendant.

5. If the jury shall believe from the evidence in the cause, that the plaintiff told the defendant, that he had ordered the horses and wagon on to the footway of Bartlett street, and shall further find, that the said horses and wagon were on said footway, in front of the plaintiff's stable, and of the witness, Riley's, dwelling-house, at the time the plaintiff so told the defendant, then the jury are instructed, that the defendant, if he believed the assertion of the plaintiff, and acted upon it as a police officer of Baltimore city; was justified in arresting the said plaintiff, and was further justified in using all the necessary means and force to make said arrest effectual; and if they further find that the defendant used no more than the necessary means and force to make said arrest effectual, then they must find a verdict for the defendant.

6. If the jury shall believe from the evidence in the cause, that the plaintiff showed the witness Curran, where the hay was to be put, and pointed out to him the window

into which it was to be put; and shall further find that the witness Curran, told the driver to drive his horses and wagon upon the footway of Bartlett street, for the purpose of putting the hay into the window, pointed out to him by the plaintiff, and shall further find that it was necessary in order to put the hay into said window, to drive the horses and wagon upon the footway of Bartlett street; and shall further find that the said horses and wagon were so driven, for said purpose, and were found by the defendant when he came upon them, standing upon said footway; then they are instructed, that the defendant was justified in arresting the plaintiff, if they shall find that he was a police officer of Baltimore city, at the time of said arrest; and they are further instructed, that the defendant, as such officer, was justified in using all the necessary means and force to make said arrest effectual; and if they further find that he used no more than the necessary means to make said arrest effectual, their verdict must be for the defendant.

7. If the jury shall believe from the evidence in the cause, that the plaintiff raised his hand with intent to strike the defendant, or abused and intermeddled with the defendant, whilst as a police officer of Baltimore city, he was ordering the negro boy Joe, to remove his horses and wagon off the footway of Bartlett street, then they are instructed that the defendant, as such police officer, was justified in arresting the plaintiff, and that he was also justified in using all the necessary means and force to make said arrest effectual; and if they further find that none other than the necessary means and force were used in making said arrest effectual, their verdict must be for the defendant.

8. If the jury shall believe from the evidence in the cause, that the plaintiff pointed out to the witness, Curran, the window through which the hay was to be put into the hay-loft, and instructed him to put the hay into

the stable-loft, through that window; and shall further find that the natural and probable result of that instruction was, that the wagon containing the hay, and the horses hauling the same, should be placed upon the footway of Bartlett street; that the witness Curran, so understood the instruction, and acting in pursuance thereof, did order the said wagon and horses to be put upon the footway of Bartlett street, and that the said wagon and horses were there placed for the purpose aforesaid; and shall further find that the plaintiff stood by and saw this act done, and made no objection thereto, but acquiesced in the act, as done in pursuance of the instruction which he himself had given, then the plaintiff is responsible for that act; and if the jury shall further find that the defendant found the said wagon and horses thus placed upon the footway of Bartlett street, when he came upon them, and that the said defendant was at the time, a police officer of the city of Baltimore, then the jury are instructed that the defendant, as such police officer, was justified in arresting the said plaintiff, and that he was further justified in using all the necessary force and means to make such arrest effectual; and if they further find that the defendant used no more than the necessary means and force to make said arrest effectual, then their verdict must be for the defendant in this action.

9. If the jury shall find, as set forth in the defendant's eighth prayer, that a wagon and horses were placed upon the footway of Bartlett street, and that the plaintiff is responsible therefor; and shall further find that said wagon and horses, as so placed, obstructed Bartlett street, and that the defendant was a police officer of the city of Baltimore, and found the said wagon and horses thus obstructing the public highway, known as Bartlett street, then the jury are instructed that said defendant was justified in arresting the said plaintiff, and was further

justified in using all the force and means necessary to make said arrest effectual, and if the jury find that the defendant used no more than the necessary force and means to render said arrest effectual, then they must find for the defendant in this action.

The plaintiff offered the following prayer :

If the jury find that the plaintiff purchased a load of hay from Charles Curran, who delivered the same by agreement at the plaintiff's stable, at the corner of Bartlett and Truxton streets, in the City of Baltimore, that the plaintiff pointed out to Curran a window or opening in his stable, which window looked into Bartlett street, as the place where he wished the hay put into the stable-loft ; that Curran then directed his driver to guide his team so as to put the hay through the window indicated by the plaintiff, that thereupon the driver went with his team and wagon on the pavement along the side of the plaintiff's stable ; that the plaintiff gave no order to the driver, nor indication to Curran, except merely to point out the window through which he wished the hay delivered ; that when the wagon had been placed as above stated, and the driver was in the act of unloading the hay by pitching it into the window, where the men employed by the plaintiff received it ; that he had remained at or near to the stable from the time when he pointed out where he wanted the hay delivered, until after the commencement of the delivery thereof at the place so pointed out ; that shortly after the driver of the hay wagon began to pitch the hay through the said window, the defendant came to where the plaintiff was standing in conversation with Curran, and addressing himself to the plaintiff, inquired in a rough manner, whose hay that was ; that the plaintiff replied, it is mine when I pay for it ; that the defendant then said, do you not know that you are violating the law by having the wagon on the pavement ; that the defendant, then addressing the driver, inquired who ordered you there ;

that the driver pointing to Curran, said that gentleman ; that the defendant then took a book out of his pocket to take down the name of Cu ran ; that Curran then told the defendant that he, Curran, had ordered the man to drive there, and if any harm was done he was responsible, not to interfere with the driver ; that while the defendant was asking the said questions and writing or pretending to write as above stated ; the plaintiff said to him, " why do you interfere in my business, you are a loafer ;" that the defendant then said, " do you call me a loafer ? " that the plaintiff replied, " you are a loafer, and a dirty loafer ;" that the defendant then said to the plaintiff, " I arrest you," and took hold of him, but let go his hold when he pulled out his book ; that the plaintiff then said he would go home, and addressing the defendant said, " you arrested me, if you have me under arrest you must keep me, for I am going home ;" whereupon the defendant seized the plaintiff, and told him that he must go to the station-house ; that this arrest of the plaintiff was illegal, and the defendant is responsible for the arrest, in such damages as the jury under all the circumstances may think right to render ; provided the jury does not find that the plaintiff did interfere with the officer in the discharge of his duty, or inform him, that he had ordered the wagon to be placed on the pavement.

The Court, (GAREY, J.,) granted the fourth, fifth and seventh prayers of the defendant, as also the prayer of the plaintiff, but refused to grant the first, second, third, sixth, eighth and ninth prayers of the defendant.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*Lewis H. Powell* and *Jas. A. L. McClure,* for the appellant.

*John S. Campbell* and *William H. Cowan,* for the appellee.

STEWART, J., delivered the opinion of the Court.

Owen Finnegan sued Michael Roddy a police officer of Baltimore, in trespass *vi et armis,* for assault and battery.

Roddy undertook to justify his acts as done in discharge of his official duty.

One Curran had sold a wagon load of hay to Finnegan, and it had been driven by a colored man to the street in front of Finnegan's stable for delivery. Finnegan, Curran and the driver being there, Finnegan gave directions to put the hay in a window, opening into his stable-loft, and the team was driven by the colored man, Curran's driver, on the pavement to the window where the hay was being delivered from the wagon to the employees of Finnegan in the loft, when Roddy came up and made enquiry why the wagon and team were on the pavement in violation of the Ordinance of the City. The Ordinance makes a party offending by driving on the pavement, liable to a fine. Finnegan having given direction as to the delivery of the hay, but Curran's teamster having driven on the pavement, some question was made on the trial below, as to Finnegan's responsibility.

Finnegan appearing as a witness for himself, gave his version of the occurrence, and when upon cross-examination had stated, "that he told Curran to put the hay in at the window, and that a couple of colored men were employed by him to put the hay in;" the counsel for Roddy proposed to ask him the following question : "When you pointed out to the witness Curran, the window through which you wished the hay put into the stable, and told him to put it in at that window, did you or did you not intend that the wagon and horses should be driven on the pavement, for the purpose of putting in the hay ?" Objection being made to the question, it was ruled to be inadmissible. This is the ground of the first exception.

If there was no other way in which the wagon could be got to the window except over the pavement, the conclusive inference to be deduced by Curran or his driver, from the order would be that Finnegan so intended; but no matter what he intended, the order was incapable of conferring authority upon Curran to violate the Ordinance.

It is against the policy of the law to permit a party to authorize another to do an unlawful act; such authority can impose neither duty nor obligation as to either, but may involve both in punishment. *Story on Agency, sec.* 11. If the order of Finnegan in its inception was of unlawful tendency, and was carried into effect by Curran in the violation of the Ordinance; both Finnegan, the author, and Curran, who executed it, were offenders.

Assuming the order to have been of doubtful character, it was competent to prove by Finnegan that when he gave it, he intended or contemplated a violation of the Ordinance, by its execution through Curran; or that it was to be carried into effect *non obstante* the Ordinance; for the purpose of showing his illegal complicity with Curran, in the transaction; or that such was not his intention, as the case might be.

That the order in reference to any legal responsibility for its character, depended upon its design, legal or otherwise, there can be no doubt.

If intended for mischief, and such was its result, the legal and logical responsibility therefor to that extent, attached to its author.

The enquiry into the intention of Finnegan is relevant to a proper comprehension of the nature and import of the order. If he is reliable he can give better testimony than inferential. In criminal cases the guilty intention of a party committing an illegal act is implied from his conduct; and he is not permitted upon principles of public policy to give evidence of a different intention, although he may rebutt the same by other evidence. In fact he is not

allowed to be a witness in his own case. Upon the inference from his own acts alone, his conviction of the offence may be founded, but he may in truth be innocent.

In such case for the reasons stated, under the rule of his exclusion, the conduct of the accused, from which his guilt has been inferred, is the best evidence.

In a civil proceeding growing out of an alleged criminal act of one of the parties, where he is allowed by law to testify, there is no such reason operating as in criminal cases to exclude his testimony, as to his intentions connected with the commission of an act by himself, or by another, under his direction.

On the contrary, the policy is· to relieve the witness of restrictions growing out of his interest, and to allow fuller latitude in the discovery of truth.

The witness ordinarily has the privilege of declining to answer a question, that might subject him to criminal prosecution; but this he can waive. It is the privilege of the witness not of the party. Where he is both party, and witness for himself, he must be held on his cross-examination as waiving the privilege, as to any matter about which he has given testimony-in-chief. Having testified to a part of the transaction in which he was concerned, he is bound to state the whole. See *Roscoe Crim. Evi.*, 149, *note C.* No difficulty therefore exists on account of this privilege, to exclude the question, nor was it interposed as an objection. There was error in excluding the question in this exception. If objection had been made, it is questionable if the testimony proposed to be rebutted, in the second exception, was admissible for the purpose of proving malice on the part of Roddy. If Finnegan and his employees had been frequently arrested by Roddy, that would not show malice without further proof that the arrests were without foundation.

Repeated arrests by an officer would not, *per se,* show malice.

A multiplicity of cases against Finnegan would only show he was a persistent offender, and sharp vigilance on the part of the officer.

No testimony had been offered by Finnegan which required to be rebutted.

The testimony proposed as rebutting, was, therefore, irrelevant. As original testimony it was not admissible, being the mere declarations of third persons.

If the jury found the facts as stated in the appellant's first, second, sixth, eighth and ninth prayers, in substance that Finnegan gave the order for the delivery of the hay at the window, and that it could not be delivered without driving on the pavement, or that he intended the wagon to be driven over the pavement, and Curran so understood the order ; or that Finnegan stood by and made no objections thereto, but acquiesced as done in pursuance of his direction, he was guilty of a violation of the Ordinance, and Roddy was justifiable in his arrest, if he used no more force than was necessary to make the arrest and detention for hearing, effectual.

If Curran's driver, under his direction, drove over the pavement, he was an offender, and Finnegan's order could not relieve him from the consequences. Finnegan's order would have been harmless without the execution of it. If Curran was guilty, that did not exonerate Finnegan for having given the order, if he knew its execution was impracticable without going over the pavement, or standing by and seeing the wagon driven on the pavement ; and the hay delivered to his employees without objection ; such conduct on the part of Finnegan made him an offender, and guilty of the violation of the Ordinance.

Whether he was the most active offender or not is immaterial. Both parties, Curran and Finnegan being present, contributing to the commission of the offence, were liable as principal offenders.

By the common law, in all offences below felony, there can be no accessories. In misdemeanor all are principals,

and there are no accessories in the technical sense of that term. *Roscoe's Crim. Evi.*, (7 *Ed.*,) 178, 185 ; 1 *Starkie Crim. Plead.*, (2nd *Ed.*,) 81 ; 1 *Stark. Crim. Law*, secs. 622, 629, quoted in 2nd *Ed. of* 2 *Bishop on Crim. Proceed.* All advisers, contrivers and procurers are equally principals, with those who commit the offence, though they be absent at the time of its commission.

In misdemeanor the act may be charged as done by the principal himself, without reference to the agent. 1 *Wharton Crim. Law*, sec. 152.

A participation in the act committed, in any way, makes the party liable as principal. Anything in the conduct of a mere bystander, evincing a design to encourage, incite, approve of, or in some manner affording aid or consent to the act, will render him liable as a principal, in a misdemeanor, and it is not necessary to prove the party actually aided in the commission of the offence. 1 *Wharton's Crim. Law*, sec. 116.

Finding the parties in the act of violating the Ordinance, Roddy was not only justified in making the arrest and detention of the offenders for hearing, but his duty required him to do so, upon his responsibility as a police officer, without obtaining a warrant from any other quarter.

The consequent delay in the procurement of a warrant, might have enabled the parties to make their escape—such narrow construction of his duty would be unreasonable, and is utterly unwarranted.

The Board of Police Commissioners, and the police officers appointed by their authority, are State officers ; but they exercise the police power of the city, and it is their duty to enforce all the laws and ordinances of the city, which can be enforced by the police. They have the power to prevent the commission of crime, and to arrest and detain offenders for hearing, without warrant, wherever other police officers can do so by the common law, that is, where the offence whether by the common law, by statute,

ordinances of the city, or police regulation, is committed within their view, it is their duty to do so. *Mayor & City Council of Baltimore vs. Howard*, 15 *Md.*, 376 ; *Altvater vs. Mayor & City Council of Balt.*, 31 *Md.*, 462 ; *Mitchell vs. Lemon*, 34 *Md.*, 176.

The appellant's first, second, sixth, eighth and ninth prayers ought to have been granted.

His third prayer was properly rejected. The other transactions referred to therein, could not be used for the purpose of showing the intention of the appellee in the matter in question.

The appellee's prayer was calculated to mislead the jury by its selection and collocation of specific items of testimony prominently detailed, totally ignoring other material facts. The consideration of all the facts, however minute, might have established a conclusion inconsistent with the theory of that prayer. *Walsh vs. Taylor*, 39 *Md.*, 592.

But another conclusive objection to the prayer was, that it contained instructions in conflict with the theory of the appellant's prayers which we have stated, ought to have been granted. There was error in the allowance of the prayer.

The proviso to this prayer, and the fourth, fifth and seventh prayers of the appellant, which were granted, very correctly stated the law upon another branch of the defence. If Finnegan had not been concerned in the violation of the ordinance, yet, if when Roddy was enquiring into the circumstances, to enable him to ascertain the offending party, Finnegan obstructed him in the discharge of his duty ; such conduct was unlawful, and justified Roddy in arresting him. The fact that Finnegan was under the influence of liquor, afforded no excuse for such conduct.

Police officers, like other officers of the law, are not to be maltreated in the faithful discharge of duty, free from

malice, ill-will, oppression, or the use of unnecessary force, but are entitled to aid and assistance.

If they fail in the performance of duty, or their conduct proceeds from a spirit of oppression or annoyance, they place themselves beyond the immunity afforded by the law, and become offenders themselves, and are liable to the severest penalties.

With reference to such indemnity and peril, their conduct must be considered.

*Judgment reversed, and new trial ordered.*

(Decided 21st January, 1876.)