LOMP *v.* STATE

[No. 329, September Term, 1962.]

*Decided June 6, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Sidney Blum,* for appellant.

*Stuart H. Rome, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Robert C. Murphy, Deputy Attorney General,* and *William J. O'Donnell, State's Attorney for Baltimore City,* and *Peter J. Carpenti, Special Attorney,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Judge Oppenheimer, sitting in the Criminal Court of Baltimore without a jury, found sufficient corroboration of the

testimony of an accomplice to convict the appellant, Lomp, of larceny and conspiracy to violate the law against larceny. This appeal challenges the sufficiency of the corroboration.

In the early morning hours of July 8, 1962, the police received a call that a filling station in Baltimore had been robbed. At the station they interrogated the attendant, Cates, who, as he later testified, first told them that a colored man hit him and took $50.00 of the station's money, and then changed his story and said that Lomp, whom he knew, had come to the station about 2:30 a.m. on July 8 to talk, that Lomp said he needed money, that "he'd do about anything for it," that "I'd just about rob you," and then they talked a while and decided to take the money and split it. Lomp took $25.00 down to Cates' car, put it in the glove compartment, came back and took another $25.00, hit Cates on the head so as to furnish verisimilitude to the story of the colored man and left. Cates then testified he "called the law afterwards."

Lomp admitted that he was at the filling station talking to Cates from two or two-thirty to four o'clock but claimed he left no later than four. Lomp's mother came in from a party at three, and Lomp was not home; but when she checked again at four-thirty, he was in bed, apparently asleep. She said Lomp was out of work and that she had been giving him small amounts of money for transportation to look for work and for haircuts and cigarettes.

In the City Jail awaiting trial, Lomp and Cates remained on friendly terms, although Lomp knew Cates had told the police that he, Lomp, had masterminded and participated in the theft.

Judge Oppenheimer became convinced that Cates had told the truth and that he had neither the imagination nor the initiative to plan the larceny and no motive to testify other than truthfully. He considered that the details of the crime were "consistent with the makeup of the defendant Lomp rather than of the defendant Cates." He was not unmindful of Lomp's testimony that he was friendly with Cates in jail and gave him cigarettes, saying that he did not believe Lomp to be a man who would forgive an attempt to implicate him falsely in a crime of which he was innocent, so that he found support for his judgment in Lomp's conduct.

The law of corroboration in Maryland has been fully explored and discussed in various recent cases, particularly in *McDowell v. State,* 231 Md. 205, in which many of the prior cases are analyzed. There need not be corroboration sufficient to convict, exclusive of the testimony of the accomplice. It is enough if the accomplice is supported in at least some material points tending to show the guilt of the accused. *Wright v. State,* 219 Md. 643, as was noted in *McDowell,* said the extrinsic support should tend to show identity of the accused with the perpetrators of the crime or with participation in its commission. Here, as in *Wright* and *McDowell,* there was evidence (furnished by Lomp himself and his mother) tending to show a motive for larceny of money, presence at the scene at an unusual time (when the crimes could have been committed) and identity with an admitted perpetrator of the crimes. In *Boggs v. State,* 228 Md. 168, 171, it was said that "the very fact that appellant and Donnan were, by appellant's own admissions, in the vicinity of the crime in apparent companionship may also sufficiently connect the accused with the commission of the crime so as to furnish the necessary corroboration." In the case before us we think the corroboration was sufficient in law to support a finding of guilt.

Appellant urges earnestly that the police received the call from Cates about five a.m. and that Cates, on cross-examination, said he called the police about five minutes after Lomp hit him on the head and left, and, therefore, Lomp could not have been guilty since he was home by four-thirty, at least. However, Cates also testified that Lomp left and he called the police "afterwards" and that he had no idea of the precise times when the various steps in the plan occurred. It is clear that Cates' version of the occurrence is that the conspiracy was formed and the money taken an appreciable length of time before the call to the police. As Judge Oppenheimer said in his opinion below: "If there is corroboration of a material point, as I have found there is, the fact there is a dispute as to other facts goes to the credibility of the witnesses, not to the sufficiency of the evidence."

We see no basis for an appellate conclusion that the find-

540

ings of facts made by Judge Oppenheimer were clearly errone-
ous or that he misread or misapplied the law.

*Judgment affirmed, with costs.*