## FABIAN v. STATE

[No. 304, September Term, 1963.]

308

*Decided June 19, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Paul Wartzman* for the appellant.

*John W. Sause, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *Andrew J. Graham* and *Bernard L. Silbert, Assistant State's Attorneys,* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

After a non-jury trial in the Criminal Court of Baltimore, the appellant, William W. Fabian, was found guilty under the second, fourth and sixth counts of indictment No. 1035, charging, respectively, breaking a warehouse with intent to steal goods valued at less than $100.00; larceny of goods valued at less than $100.00; and breaking and stealing goods valued at more than $5.00. (Code (1957 and 1963 Cum. Supp.), Art. 27, secs. 342, 341 and 33.) He was also found guilty under indictment No. 653, which charged assault and battery upon an infant child. He was sentenced to ten years' imprisonment on count six of indictment No. 1035, no sentences being imposed under counts two and four. A concurrent sentence of one year was imposed under the assault indictment, No. 653. Fabian appealed from both judgments.

Due to the nature of the appellant's contentions, it is necessary to set out the testimony of several witnesses at some length. With respect to indictment No. 1035, Diane Greenstreet, an 18 year old unwed mother, who lived with Fabian, testified that on the evening of January 17, 1963, while she and Fabian were in the apartment of William Phillips, Fabian instructed her to go with him to meet his sister. She said that she and Fabian, accompanied by Philip Windsor, set out to go to the place of employment of the appellant's sister, the Aus-

tin Biscuit Company in Baltimore City, but on the way they stopped at the apartment of William Glackin. When they arrived they found Glackin and Norman Barrick in the apartment. William Phillips either accompanied Fabian to Glackin's apartment or, as he testified, met him there. Miss Greenstreet stated that Fabian told Glackin and Barrick, "I want you to do something for me * * * I want you to go up to General Crafts and break in and steal checks." She did not state that Barrick took part in the conversation or agreed to participate in the plan. She said that when they all left the apartment, she and Fabian went to the Austin Biscuit Company where his sister worked, and sat down on a bench in front of the building to wait until she got off from work at 12:30 A.M.

The Austin Biscuit Company was said to be about two blocks from the plant of the General Crafts Corporation. While she and Fabian were waiting, Miss Greenstreet testified, Windsor kept running back and forth from the office of the General Crafts Corporation, "four times altogether", to report to Fabian on the progress of the entry and search of the office. According to the witness, on one occasion Windsor told the appellant "one of the boys couldn't get in and he pushed him in the window", and on another occasion Windsor reported that "they couldn't find nothing". She said that after the search of the office was completed, Windsor returned to where the appellant was seated with Miss Greenstreet, and was told by the appellant to go to the apartment of one of the parties. Then, at 12:30 A.M., she said, the appellant's sister came out and the appellant had a conversation with her. Thereupon, Miss Greenstreet testified, the appellant, Windsor (who had not left), and she, then walked to the apartment mentioned—apparently Glackin's. When the appellant examined what had been stolen, and found that only office papers had been taken, he stated, according to Miss Greenstreet, that "they were garbage and no good to him". Subsequently, the appellant and Miss Greenstreet returned to the apartment which they shared.

Norman Barrick testified that while he was at Glackin's apartment, a person named Fabian came in with Philip Windsor and Diane Greenstreet. He said this was the only time he had ever met Fabian or Miss Greenstreet, and when asked

whether Fabian was in court, he replied, "I couldn't swear to it." When he was asked how he knew Fabian was at the apartment, he said, "Everybody mentioned Fabian's name. Everybody when they talked to him, said, Fabian. So, I suppose it was him." According to Barrick's testimony, the person named Fabian offered Glackin $100.00 to get three blank checks, and Glackin agreed to get them from the office of the place where he worked, the General Crafts Corporation. Barrick stated that he left the apartment with the appellant and the others, but that he parted company with them about half a block away and went home because "I didn't want no trouble". There is no intimation in the record extract that he took part in any of the subsequent events that night.

The appellant's sister, Shirley Fabian, testified that when she got off from work on January 18, 1963, at 12:30 A.M., she was met by the appellant, Diane Greenstreet and Philip Windsor. She further stated that after the appellant had asked her for a loan of five dollars, she and the others walked for a few blocks, and then the appellant, Miss Greenstreet and Windsor left her. She then walked to her home nearby.

Charles Bianconi, who lived in the same apartment with the appellant and Miss Greenstreet, testified that he had stayed with Miss Greenstreet's child on the night of January 17, 1963, while she went out with the appellant. He testified that when the appellant and Miss Greenstreet returned early the next day, the appellant "told me about hitting this place called 'Wally's' ", because "he thought there might be some checks in there".

The plant manager of the General Crafts Corporation testified that on the night of January 17, 1963, a door in the rear of the plant was jimmied open and some office records and a micrometer were stolen. While he said the records were of great value to the corporation, he placed a monetary value of five dollars on each of three missing ledgers, and estimated the value of the micrometer to be from fifteen to twenty dollars. The total value of the stolen items was given in the indictment as $18.00.

The facts underlying the assault and battery conviction under indictment No. 653 were not complicated and may be summarized briefly. The incident apparently took place early on

the morning of January 18, 1963. Miss Greenstreet testified that upon finding that her two and one-half year old son had wet the bed, the appellant "started slapping him in the face", even though the child was asleep at the time. When asked why the appellant beat the child, she replied, "He said he didn't like him." Charles Bianconi testified that the appellant beat Miss Greenstreet's infant son "all the time"; however, he did not testify that he had seen the appellant strike the child at the time in question.

Acting on information supplied to them by Bianconi, Baltimore City police officers arrested the appellant on February 8, 1963, without a warrant, "for investigation of forged checks". He was held until February 11, 1963, when he was given a preliminary hearing in the Municipal Court of Baltimore City on a charge of assault and battery which had been placed against him by Miss Greenstreet on behalf of her infant son. At the hearing the appellant, who was not represented by counsel, pleaded not guilty. The Municipal Court judge did not proceed with the case against the appellant, but ordered that he be held for action by the Grand Jury. Code (1963 Cum. Supp.), Art. 26, sec. 109(c)(4). On March 4, 1963, the Grand Jury returned an indictment (No. 653) charging the appellant with assault and battery upon Miss Greenstreet's son. Subsequently, on March 26, 1963, the other indictment under which the appellant was convicted, No. 1035, was returned by the Grand Jury.

Preliminarily, the appellant claims that the second, fourth and sixth counts of indictment No. 1035 are inconsistent and that he could not lawfully be convicted under all three. As noted previously, the trial court sentenced him under count six, but imposed no sentence under counts two and four. Thus, the failure to sentence under the second and fourth counts was tantamount to a suspension of sentence on those counts, and in such a case the appellant had the right to appeal from the convictions under counts two and four, as well as from the conviction and sentence under count six. Code (1963 Cum. Supp.), Art. 5, sec. 13; *Pearlman v. State,* 226 Md. 67, 71, 172 A. 2d 395 (1961).

We held, in *Young v. State,* 220 Md. 95, 100, 151 A. 2d

140 (1959), *cert. den.* 363 U. S. 853 (1959), that while a defendant may be convicted of a breaking with intent to steal (second count here), as well as a larceny (fourth count here), arising out of the same transaction, he may not be convicted for breaking *and* stealing (sixth count here) as well as for larceny (fourth count here), where the larceny consists of the same act as the stealing. See also *Vandegrift v. State*, 226 Md. 38, 40-41, 171 A. 2d 713 (1961). Hence, the convictions under the fourth and sixth counts of indictment No. 1035 were inconsistent, and therefore, since sentence was imposed under the sixth count, and none was imposed under the fourth count, we will reverse the conviction under the fourth count. *Young v. State, supra* (at p. 101 of 220 Md.). Cf. *Marks v. State*, 230 Md. 108, 185 A. 2d 909 (1962). On the other hand, there was no inconsistency between the second count (breaking with intent to steal) and the sixth count (breaking and stealing), because the two offenses charged therein have separate elements (the intent in the one and the stealing in the other) and are therefore distinct crimes. See *Young v. State*, and *Vandegrift v. State*, both *supra; Veney v. State*, 227 Md. 608, 611-614, 177 A. 2d 883 (1962).

Counsel for the appellant raises three principal questions. The first contention is that the evidence was insufficient to support a verdict of guilty under the second and sixth counts of indictment No. 1035 because Miss Greenstreet and Barrick were accomplices and there was no independent evidence to corroborate their testimony, and that therefore the conviction cannot stand. The trial court felt that while Miss Greenstreet (who was charged in some other cases involving the appellant) was an accomplice, sufficient corroboration of her testimony was provided by the testimony of Barrick "who is not a party in any of these offenses, but is a strictly independent nonaccomplice witness". We think the court's conclusion was correct.

In *Lucchesi, etc. v. State*, 232 Md. 465, 468, 194 A. 2d 266 (1963), Judge Horney for the Court reiterated the rule that for a person to be an accomplice it was necessary to show that he knowingly, voluntarily and with common interest with the defendant, participated in the commission of the crime either

as a principal or as an accessory before the fact. Judge Horney also quoted 2 Wharton, *Criminal Evidence* (12th ed.), sec. 448, to the effect that "[t]he term 'accomplice' does not include a person who has guilty knowledge * * * or who was even an admitted participant in a related but distinct offense * * *," and that an accomplice is " 'one culpably implicated in, or who unlawfully co-operates, aids, abets or insists [sic] in, the commission of the crime charged.' " See also *Harriday v. State,* 228 Md. 593, 182 A. 2d 40 (1962) ; *Watson v. State,* 208 Md. 210, 117 A. 2d 549 (1955) ; *Coleman v. State,* 209 Md. 379, 121 A. 2d 254 (1956).

We find no evidence whatsoever in this record that Barrick participated in, aided, abetted or counseled the breaking, entering or theft for which the appellant was convicted under indictment No. 1035. The fact that he was present when the plot was hatched was not sufficient to make him an accomplice, under the authorities. His statements that he had never met Fabian before, that he took no part in the conversation, that he did not agree to participate in the crime, and that he separated from the others almost immediately after leaving the apartment, and went home, were not contradicted in any particular. Thus he was not an accomplice and his testimony afforded sufficient corroboration for that of Miss Greenstreet.

However, even if it were assumed that Barrick was an accomplice himself, there was, in view of the rule that not much in the way of corroboration is required, sufficient corroborative evidence to "support the testimony of the accomplice [Miss Greenstreet] as to some of the material facts tending to show that the accused was either identified with the perpetrators of the crime or had participated in the commission of the crime itself." *Wright v. State,* 219 Md. 643, 650, 150 A. 2d 733 (1959), cert. den. 361 U. S. 851. See also *McDowell v. State,* 231 Md. 205, 189 A. 2d 611 (1963) ; *Boggs v. State,* 228 Md. 168, 171, 179 A. 2d 338 (1962). The testimony of the appellant's sister that the appellant, Miss Greenstreet, and Philip Windsor (one of the active participants in the crime), met her at her place of employment on the night of the breaking, at 12:30 A.M., and then left her after her brother talked with her, corroborates Miss Greenstreet's testimony that they had

waited in front of the Austin Biscuit Company for the appellant's sister until she got off work at 12:30 A.M., and then returned to the apartment where the stolen goods had been taken. The testimony of the plant manager that financial records were stolen, corroborates Miss Greenstreet's testimony that the goods purloined were "just papers and stuff that they had gotten out of desk drawers". Finally, the testimony of Bianconi that the appellant "told me about hitting this place called Wally's" because he "thought there might be some checks in there", while not tying the appellant to the particular breaking here involved, indicated that the appellant was engaged in an unlawful attempt to obtain checks. See *Ward v. State,* 219 Md. 559, 563, 150 A. 2d 257 (1959). We believe this testimony was sufficient to support the testimony of Miss Greenstreet on "at least some material points", and tended "to show that the accused was either identified with the perpetrators of the crime or had participated in the commission of the crime itself". See also *Lomp v. State,* 231 Md. 537, 539, 191 A. 2d 224 (1963).

The appellant's counsel has referred to several minor conflicts between the testimony of Miss Greenstreet and that of Barrick, and also has attempted to discredit Barrick's testimony by claiming that Barrick could not identify the appellant at the trial. We find the conflicts trivial, and, in any event, they would only go to the credibility of the witnesses, a matter for the trier of fact to determine. The claim of failure to identify the appellant was based on Barrick's reply, "I couldn't swear to it", when he was asked whether Fabian was in the courtroom. The witness was not requested to clarify his answer; the matter was not pursued further. At best, the answer was ambiguous: the witness could have meant that he was unable to identify the defendant, or, on the other hand, that he simply was not certain whether Fabian was in the courtroom at the moment (the witness not knowing that the trial could not have proceeded without the continuous presence of the defendant). Throughout his other testimony, however, Barrick made it clear that he was referring to the man, whom everyone called Fabian, who had come to Glackin's apartment and proposed the crime, and who was identified by other witnesses as the defendant in the case being tried. Suffice it to say that the trial judge was entitled to

accept the "clear meaning of his testimony as a whole" and was "not required to segregate and accept as decisive one isolated answer". *Nicholson v. State,* 233 Md. 391, 393-394, 196 A. 2d 872 (1964).

It is argued that even if there was sufficient corroboration, there was no evidence to convict under count six of indictment No. 1035, breaking *and* stealing (or under count four, larceny), because the appellant "never urged the taking of the goods actually stolen, had no use for them, and never had them in his possession." While the appellant did not instigate the theft of what in fact turned out to be stolen, we believe that he is criminally responsible for both the breaking and stealing, since the taking of the office records was a natural and probable consequence of the criminal activity that he counseled and procured. "One who incites the commission of a crime is * * * guilty of all incidental consequences which might reasonably be expected to result from the intended wrong * * *", Perkins, *Criminal Law* (1957 ed.), p. 576; see authorities cited in fn. 85. An accessory before the fact or instigator is "responsible for all crimes incidental to the criminal misconduct he counsels, or which are among its probable consequences * * *", 1 *Wharton's Criminal Law,* (12th ed.), sec. 268. See also 22 C.J.S., *Criminal Law,* sec. 92, and cases there cited. These principles apply to the instant case in which the appellant was properly tried as a principal because of the rule that accessories to misdemeanors are chargeable as principals. The crimes charged in the three counts of indictment No. 1035 under which the appellant was convicted are misdemeanors. Code (1957 and 1963 Cum. Supp.), Art. 27, secs. 342, 341 and 33, *supra; Debinski v. State,* 194 Md. 355, 358, 71 A. 2d 460 (1950). In misdemeanors "* * * all advisers, contrivers and procurers are equally principals, with those who commit the offense, though they be absent at the time of its commission", *Roddy v. Finnegan,* 43 Md. 490, 504 (1876). See also *Felkner v. State,* 218 Md. 300, 304, 146 A. 2d 424 (1958). We conclude, therefore, that the appellant was properly convicted under count six of indictment No. 1035.

The second contention raised by counsel for the appellant was that the lower court erred in convicting the appellant of

assault and battery on the infant child of Miss Greenstreet on the ground that her testimony in regard thereto was too contradictory and incredible to show guilt beyond a reasonable doubt, and because the appellant stood in *loco parentis* to the child and thus had a right to discipline him "according to his best judgment". The only contradiction claimed to have occurred in Miss Greenstreet's testimony concerning the assault on her child was in regard to the time the assault took place. Under direct examination she told of the slapping, and was then asked, "Was it after this time that Bill [Fabian] slapped your son that you went to the vicinity of the Austin Peanut Butter Company [the Austin Biscuit Company, where she and the appellant met the latter's sister] ?" to which she replied, "It was before." Later, on cross examination, the witness said the slapping occurred at 4 A.M., which was after she and the appellant had returned from Glackin's apartment. The matter of time was not further clarified, and the appellant now claims that by the quoted question and answer the witness meant that the slapping occurred before 11 P.M., when she and Fabian left their apartment to meet his sister, which would be, of course, a variance from her testimony on cross examination. However, we think the appellant misinterprets the quoted question and answer. We believe the wording indicates the witness meant that she and Fabian went to the Austin plant before he slapped the child, not after. In any event, the matter of credibility of the witness was for the trier of fact. See *Nicholson v. State, supra*. While Bianconi did not testify that an assault took place on the day in question, Miss Greenstreet's testimony, if believed, was in itself sufficient to convict. Bianconi's testimony that the appellant beat the child "all the time" was admissible as evidence of other offenses which "has a natural tendency to establish, or offers a reasonable presumption or inference as to, a principal fact at issue or matter in dispute", *Ward v. State, supra* (at p. 562 of 219 Md.).

The argument that the appellant stood in *loco parentis* to the child and that therefore the assault was not culpable, even if available under the facts of this case, overlooks the fact that the punishment which a person standing in *loco parentis* may in-

flict upon the child must not exceed that properly required for disciplinary purposes and must not be excessive or cruel. As stated in 39 Am. Jur., *Parent and Child,* sec. 102, "A parent or one standing in his place may be criminally liable as for assault and battery if he exceeds or abuses his authority to correct a child and inflicts corporal punishment which exceeds the bounds of due moderation * * *." Cf. *Palmer v. State,* 223 Md. 341, 164 A. 2d 467 (1960). Slapping a two and one-half year old infant for bedwetting, while it was asleep, clearly exceeded the bounds of due moderation and constituted an abuse of authority to correct the child. In addition, malice motivating the slapping was indicated in the testimony of Miss Greenstreet and Bianconi. Therefore, even assuming, without deciding, that the appellant stood in *loco parentis* to the child, that relationship would not be a defense under the facts of this case.

The last contention raised by appellant's counsel was that, in view of *White v. Maryland,* 373 U. S. 59, 10 L.Ed. 2d 193 (1963), the appellant's rights under the Fourteenth Amendment to the United States Constitution and Articles 21 and 23 of the Maryland Declaration of Rights were denied by the failure to provide the appellant with counsel at the preliminary hearing in the Municipal Court of Baltimore City. However, it is conceded that the appellant pleaded not guilty at the preliminary hearing, and there was no claim or showing that he admitted guilt or that any evidence of any admission by him before the Municipal Court was introduced at his trial upon the indictments. "Under these circumstances we think it is clear that even if he did not have counsel the preliminary hearing was not such a critical stage of the proceedings as to require the presence of counsel." *Lauder v. State,* 223 Md. 142, 145, 195 A. 2d 610 (1963). See also *Arrington v. Warden,* 232 Md. 672, 195 A. 2d 38 (1963), distinguishing *Hamilton v. Alabama,* 368 U. S. 52, and *White v. Maryland, supra;* and see *Application of DeToro,* 222 F. Supp. 621, 624 (D.C.Md., 1963), aff'd. 332 F. 2d 341 (C.A. 4, 1964).

The appellant filed in proper person a "supplement" to the brief of his counsel raising six additional questions, some being mere repetitions of issues presented by his counsel. The sup-

plement was filed and considered, and none of the contentions was found to have merit.

> *Judgment under the fourth count of indictment No. 1035 reversed; judgments under the second and sixth counts of indictment No. 1035, and under indictment No. 653, affirmed.*