IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 7, 2003 Session

# STATE OF TENNESSEE v. ANDERSON TOLIVER

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**Nos. 223083 and 223085      Stephen M. Bevil, Judge**

---

**No. E2001-00584-SC-R11-CD - Filed October 2, 2003**

---

E. RILEY ANDERSON, J., dissenting.

The majority has concluded that the trial court committed reversible error by consolidating the offenses of March 1, 1998 and April 9, 1998, and by admitting evidence of prior abuse committed by the defendant, Anderson Toliver. In my view, however, the trial court did not abuse its discretion by consolidating the two offenses and the admission of prior acts of abuse did not affect the jury's verdict. Accordingly, I dissent and would affirm the judgment of the Court of Criminal Appeals.

### Consolidation of the Offenses

The majority has concluded that the trial court committed reversible error by consolidating the March 1, 1998 and April 9, 1998 offenses for a single trial. In my view, the trial court did not abuse its discretion in consolidating the offenses and the majority has substituted its judgment for that of the trial court.

The two offenses of aggravated child abuse were charged in separate indictments. The offense of child abuse is committed when a person "knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury . . . ." Tenn. Code Ann. § 39-15-401(a) (1997). The offense of aggravated child abuse is committed when (1) the act of child abuse results in "serious bodily injury" to the child, <u>or</u> (2) the act of child abuse is accomplished with a "deadly weapon." Tenn. Code Ann. § 39-15-402(a) (1997). A "deadly weapon" is:

(A)  A firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or <u>serious bodily injury</u>; or

(B) Anything that in the manner of its use or intended use is
capable of causing death or <u>serious bodily injury</u>.

Tenn. Code Ann. § 39-11-106(5) (1997) (emphasis added). A "serious bodily injury" is one
involving:

(A) A substantial risk of death;

(B) Protracted unconsciousness;

(C) <u>Extreme physical pain</u>;

(D) Protracted or obvious disfigurement; or

(E) Protracted loss or substantial impairment of a function
of a bodily member, organ or mental faculty.

Tenn. Code Ann. § 39-11-106(34) (1997) (emphasis added).

The State orally moved to consolidate the charges on the day of trial[1] on the basis that the
charges showed "a pattern and a common scheme of plan," and that "in both of these cases the
allegations will be that the defendant [] hit the child with the same braided extension cord . . . ." The
trial court determined that the March 1, 1998 and April 9, 1998 incidents were identical to one
another in several key respects and relevant to the defendant's intent:

Since the crimes . . . are identical in every feature, the same place, the
same room, the same method of administering this type of injury, the
same weapon, or the same object . . ., they're so identical to each
other, going to that issue of intent, I'm going to allow the State to
proceed on both of these indictments."

The trial court therefore granted the State's oral motion to consolidate.

The trial court's decision on a motion to consolidate offenses or a motion to sever offenses
may be overturned only for an abuse of discretion. <u>State v. Shirley</u>, 6 S.W.3d 243, 247 (Tenn. 1999).
An abuse of discretion occurs only when the "court applied an incorrect legal standard, or reached
a decision which is against logic or reasoning that caused an injustice to the party complaining." <u>Id.</u>

Rule 8(b) of the Tennessee Rules of Criminal Procedure provides that "[t]wo or more
offenses may be joined in the same indictment, presentment, or information, with each offense stated

---

[1] I fully agree with the majority's conclusion that the State's motion was untimely and that the defendant has
not waived review of this issue.

in a separate count or consolidated pursuant to Rule 13 <u>if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character</u>." Tenn. R. Crim. P. 8(b) (emphasis added). Similarly, Rule 13(a) of the Tennessee Rules of Criminal Procedure states that the trial court "may order consolidation of two or more indictments, presentments, or informations for trial if the offenses and all defendants could have been joined in a single indictment, presentment, or information pursuant to Rule 8." When a defendant objects to consolidation, "the state must then demonstrate that the offenses are parts of a common scheme or plan and that evidence of each offense is admissible in the trial of the others." <u>Spicer v. State</u>, 12 S.W.3d 438, 444 (Tenn. 2000).

Accordingly, as the majority correctly summarizes, a trial court must find that the multiple offenses are parts of a common scheme or plan, that evidence of each offense is relevant to some material issue in the trial of the other offenses, and that the probative value of the evidence of other offenses is not outweighed by the prejudicial effect on the defendant. <u>Id.</u> at 445. Unlike the majority, I would conclude that these requirements were satisfied in the present case.

Common Scheme or Plan

First, the trial court did not abuse its discretion in finding that the evidence of the offenses on March 1 and April 9, 1998, established a common scheme or plan. A common scheme or plan may be shown where (1) the offenses reveal a distinctive design or are so similar as to constitute "signature" crimes, (2) the offenses are part of a larger continuing plan or conspiracy, or (3) the offenses are part of the same criminal transaction. <u>State v. Moore</u>, 6 S.W.3d 235, 240 (Tenn. 1999). Offenses that reveal a "distinctive design" need not be identical, but they must have a "modus operandi . . . so unique and distinctive as to be like a signature." <u>Id.</u>

Although the majority correctly notes that identity was not a material issue in this case, the evidence nonetheless established that the defendant beat the victim in his bedroom on March 1, 1998, and April 9, 1998; that the defendant beat the victim as "punishment" for poor grades; that the defendant ordered the victim to bend over; that the defendant struck the victim in the back or buttocks; and that the defendant used an unusually distinctive device, *i.e.*, a braided extension cord, to inflict the beatings. These nearly identical circumstances, particularly the defendant's use of a unusual device for inflicting extreme physical pain, demonstrated the defendant's distinctive design and unique method in committing the two offenses.

I see no significant differences in the facts of the two offenses. Although the majority notes that the defendant and the victim were alone during the March 1 offense and that the victim was forced to bend over a hamper in the April 9 offense, these facts are of little weight given that the defendant's motive and method of punishment were precisely the same in each offense. Similarly, although the majority notes that the defendant wrapped the cord around the victim's neck during the April 9 offense and used it to sling the victim around the room, these differences were due only to the fact that the victim resisted the beatings during this offense. The beating itself inflicted as punishment by the defendant was precisely the same. Finally, the fact that the extension cord was no longer wrapped with wire in the offense on April 9 did not change the distinctive nature of the

-3-

weapon used to administer the beatings. Indeed, the extension cord remained some forty inches long, remained braided to increase its thickness, and remained nearly two inches thick.

Finally, the cases cited by the majority are distinguishable. In Shirley, for example, the Court concluded that the defendant's use of a ski mask, gloves, and a gun to commit several armed robberies did not constitute a common scheme or plan given the lack of any unique or "signature" facts. Shirley, 6 S.W.3d at 249. The Court emphasized that the defendant had worn different clothing in the robberies, used different methods of committing the offense, and used different means of escape after each of the offenses. Similarly, in Moore, the Court held that there had been no common scheme or plan, noting numerous substantial differences in the offenses including the defendant's use of a hammer and electrical cord to commit the second of the two offenses. Moore, 6 S.W.3d at 241 n.9.

In sum, I would conclude that the trial court did not abuse its discretion in finding that the evidence of the offenses on March 1 and April 9, 1998, established a common scheme or plan.

### Material Issue

Next, I believe that the trial court did not abuse its discretion in finding that evidence of one offense would have been admissible in a trial of the other offense had they been tried separately. Although evidence of a common scheme or plan is most often used where identity of the perpetrator is a material issue, it is not strictly limited to that purpose. See Moore, 6 S.W.3d at 239 n.5. The trial court recognized that identity was not a material issue in this case, but it found that the offenses were relevant to establish the defendant's culpable mental state and to establish that the injuries suffered by the victim were not the result of accidental means. See Tenn. Code Ann. § 39-15-401.

The majority concludes that the offenses were not relevant to intent or any other material issue. While the majority correctly states that child abuse is a "nature of conduct" offense, see State v. Ducker, 27 S.W.3d 889, 896-97 (Tenn. 2000), that does not resolve the issue. The charges in this case were *aggravated* child abuse. The prosecution was required to establish that the defendant knowingly treated the victim in a manner that caused injury and that the defendant did so by employing a "deadly weapon." The latter issue required the jury to determine whether the defendant used a device that was "designed, made or adapted for the purpose of inflicting death or serious bodily injury" or was "in the manner of its use or intended use capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-15-402(a) (emphasis added). Accordingly, I would conclude that the offenses were admissible for the jury to consider the defendant's motive, purpose, and intent in using the braided extension cord as it related to the required element of "deadly weapon." I also believe that the offenses were admissible to rebut the theory that the offenses were committed through "accidental means." See Tenn. Code Ann. § 39-15-401. In sum, I believe that the trial court did not abuse its discretion.

<u>Probative Value</u>

Finally, I would conclude that the probative value of the offenses was not outweighed by the risk of unfair prejudice to the defendant. As I have discussed, the offenses established a common scheme or plan that was relevant to and probative of material issues at trial. Moreover, the record reveals that these offenses focused on the device used by the defendant to inflict the punishment and whether the defendant knowingly used a deadly weapon to inflict serious bodily injuries to the victim. The evidence did not focus on the defendant's propensity to engage in this conduct – indeed, although the defendant denied the March 1 incident, he expressly asserted to police and during trial that he had the right to punish the victim in this manner for poor grades.

Accordingly, I would affirm the Court of Criminal Appeals' conclusion that the trial court did not abuse its discretion in consolidating the March 1 and April 9, 1998 offenses.

**Evidence of Prior Acts by the Defendant**

The majority has concluded that the error in consolidation the two offenses was reversible error when combined with the trial court's decision to admit evidence that the defendant had beaten the victim and the victim's half-brother before the offenses took place on March 1 and April 9, 1998. Although I fully agree that the trial court erred in admitting this evidence, I disagree that the error affected the verdict of the jury and I would therefore affirm the Court of Criminal Appeals' judgment.

The victim testified that the defendant began beating him with a weight belt when he was in the eighth grade, which was some four years before the incidents that occurred on March 1 and April 9, 1998. The beatings occurred whenever the victim or his half-brother received a grade lower than a "B." The victim described that the defendant would first tell him to bend over and then hit him with the weight belt "on the back or the butt." The victim said that the pain from the beatings lasted "sometimes weeks, sometimes days." The victim's half-brother also testified that the defendant had spanked him for poor grades on several occasions.

In ruling that the testimony was admissible, the trial court explained that it would "allow the state to bring up these [incidents] to show [the] absence of mistake or lack of intent." The trial court instructed the jury as follows:

> I'm allowing the testimony to be presented to the jury at this time
> about prior incidents. <u>Now, I'm not allowing this testimony to show</u>
> <u>that [the defendant] has a propensity to commit this type of conduct</u>
> <u>or habitually committed this type of conduct [and] you're not to find</u>
> <u>out whether [the defendant] committed these offenses on any other</u>
> <u>days.</u> I'm only allowing this evidence in because the defense in this
> case is that this was not an intentional, knowing act on this particular

day, that there was no intent to commit the crime of aggravated child abuse, that it was an accident.

(Emphasis added).  The trial court also instructed the jury that it was to "consider [the] testimony about prior incidents as going toward" the dates of March 1 and April 9, 1998.

As the majority correctly observes, evidence showing that the defendant "has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible . . . ." State v. Mallard, 40 S.W.3d 473, 487 (Tenn. 2001) (quoting Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980)); see also Tenn. R. Evid. 404(b). The rule recognizes that "the jury could be tempted to convict solely upon a defendant's propensity to commit crimes rather than convict solely upon evidence relating to the charged offense." Spicer, 12 S.W.3d at 448.  Evidence of prior crimes, wrongs or acts, however, may be admissible for purposes other than establishing a defendant's character or propensity to engage in conduct, such as the "motive of the defendant, intent of the defendant, the identity of the defendant, the absence of mistake or accident if that is a defense, and, rarely, the existence of a larger continuing plan, scheme, or conspiracy of which the crime on trial is a part."  State v. Gilliland, 22 S.W.3d 266, 271 n.6 (Tenn. 2000).

The critical issue presented is whether the evidence of the defendant's prior beatings of the victim was used solely to establish the defendant's propensity or character or whether the evidence was admissible for some other purpose.  The trial court found that the evidence of prior acts was relevant to show that the offenses on March 1 and April 9, 1998, were intentional and that the offenses were not accidental.  The trial court attempted to give the jury an instruction limiting its consideration of the evidence to this purpose.

I agree with the majority that the trial court's findings were not supported by the record.  The trial court did not explain exactly how the evidence of any prior beatings, which did *not* involve the defendant's use of a braided extension cord, were probative to show the defendant's intent or to show that the offenses were not accidental on March 1 and April 9, 1998.  Moreover, the trial court did not balance the probative value of the evidence against the danger of its unfair prejudice in showing the defendant's propensity or character as required by Rule 404(b).

I disagree, however, with the majority's conclusion that the trial court's error affected the jury's verdict or prejudiced the judicial process.  Tenn. R. App. P. 36(b).  The evidence of the defendant's guilt was overwhelming.  The victim testified that the defendant beat him on March 1, 1998, with a braided extension cord that was wrapped with coat hangers and duct tape.  The victim also testified the beating caused "numbness" and "a real pain" that "increase[d]" and "hurt real bad." The victim also testified that the defendant again beat him with the braided extension cord, choked him, and threw him against a wall on April 9, 1998, and that he was in "lots of pain" and "hurting real bad."  The extension cord, which was admitted into evidence, was approximately forty inches long and two inches thick.  Several witnesses described the victim's distraught demeanor and severe injuries following the offense on April 9, 1998.  Although the defendant denied the March 1 offense,

he admitted that he beat the victim during the April 9 incident as punishment for the victim's grades. The defendant's wife also testified about this incident.

Although I recognize that the evidence of prior acts may have bolstered the victim's testimony by showing the defendant's propensity to engage in this conduct, the record reveals that the evidence of the prior acts was not lengthy, overly graphic, or inflammatory. Moreover, the prior acts did not involve the use of the braided extension cord wrapped with coat hangers and duct tape used in the offense on March 1, 1998, or the braided extension cord used in the offense on April 9, 1998.

In short, the main issues for the jury's determination was whether the defendant knowingly treated the victim in a manner as to inflict injury and whether he used a "deadly weapon" to inflict serious bodily injury, *i.e.*, "extreme physical pain" on the victim. Tenn. Code Ann. § 39-11-106(5) (1997). The defendant's fashioning of the braided extension cord for the specific purpose of beating the victim, when coupled with the victim's description of the pain and injuries inflicted by the defendant's use of the braided extension cord on March 1 and April 9, 1998, overwhelmingly established these elements. The jury obviously accredited the victim's testimony. As this Court has said, "the more the evidence exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome of the trial on its merits." Gilliland, 22 S.W.3d at 274. Accordingly, given the strength of the evidence, I would affirm the Court of Criminal Appeals' conclusion that the trial court's error in admitting the evidence of prior acts did not affect the result of the trial.

## Conclusion

In my view, the trial court did not abuse its discretion by consolidating the two offenses and the admission of prior acts of abuse did not affect the jury's verdict. I therefore dissent and would affirm the Court of Criminal Appeals' judgment.

_____
E. RILEY ANDERSON, JUSTICE