Melvin MARTIN, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1099.

District of Columbia Court of Appeals.

Submitted Aug. 23, 1982.

Decided Oct. 27, 1982.

---

Samuel Dash, Steven H. Goldblatt, Washington, D.C., G. Richard Strafer, and Terrence S. Hartman, LS # 3103, on brief, for appellant.

Stanley S. Harris, U.S. Atty., with whom John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, John R. Fisher, Natalia M. Combs, and E. Anne McKinsey, Asst. U.S. Attys., Washington, D.C., on brief, for appellee.

Before KERN and MACK, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

On June 25, 1981, appellant was found guilty by a jury of simple assault, D.C.Code 1981, § 22–504. Appellant challenges his conviction by contending that the trial

court erred in refusing to give requested jury instructions and by allowing the prosecutor to comment on his failure to explain to police his actions upon arrest. We affirm.

## I

■ Appellant first argues that the trial court should have instructed the jury on the parental right to discipline children, and the right of self-defense. A "defendant in a criminal case is entitled to an instruction on any issue 'fairly raised by the evidence.'" *Smith v. United States,* D.C.App., 309 A.2d 58, 59 (1973), quoting *Womack v. United States,* 119 U.S.App.D.C. 40, 336 F.2d 959 (1964). A special instruction is warranted when there is evidence of special facts sustaining a rational defensive theory. *Fleming v. United States,* D.C.App., 310 A.2d 214, 218 (1973). We agree with the trial court in this case that "the law does not recognize a justification for what [appellant] did." (Record at 98.) We find that appellant's defense theory, *viz.,* that when he struck the victim, his young cousin, he was acting first as a disciplinarian "in loco parentis" and then in self-defense, was not fairly raised by the evidence. *See Smith, supra.*

■ In order to be entitled to a jury instruction on the right of one acting *in loco parentis* to use reasonable disciplinary measures, two issues must be fairly raised by the evidence. First, there must be evidence that the aggressor stood *in loco parentis* to the child, and second, there must be evidence upon which a jury could conclude that reasonable discipline was used under the circumstances. *See Fabian v. State,* 235 Md. 306, 311, 201 A.2d 511, 518 (1964) (even assuming that one stands *in loco parentis* to a child, that relationship would not be a defense where discipline exceeds the bounds of due moderation). *See also,* 39 AM.JUR. *Parent and Child* § 102 (1938).

The trial court stated here that it was "not persuaded that [appellant] had disciplinary authority in the house," and that appellant's actions did not "sound like the exercise of proper disciplinary authority." (Record at 96.)

■ The term *in loco parentis* refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation. *Niewiadomski v. United States,* 159 F.2d 683, 686 (6th Cir.), *cert. denied,* 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859 (1947). It embodies the ideas of both assuming the parental status and discharging the parental duties. *Id.* "This relationship involves more than a duty to aid or assist . . . . It arises only when one is willing to assume *all* the obligations and to receive *all* the benefits associated with one standing as a natural parent to a child." *Fuller v. Fuller,* 135 U.S.App. D.C. 353, 418 F.2d 1189 (1969) (emphasis added).

■ In the case at bar, there is simply no evidence that appellant stood in this type of relationship with his 13-year-old cousin, the complainant. At best, the record reflects only that appellant *helped* on occasion with the basic running of the household. (Record at 55, 70.) The mother of complainant had specifically left her in the custody of her father and her paternal grandmother, but then her father passed away. (Record at 54.) The complaining witness lived in her paternal grandmother's house (Record at 49), and at no time did the grandmother testify that disciplinary authority over the girl had been specifically delegated to appellant. Further, the record does not indicate that appellant had assumed any obligations (such as financial support) that would be "associated with one standing as a natural parent to a child." *See Fuller, supra.* As such, under the circumstances of this case, the requested instruction on the right of one standing *in loco parentis* to use reasonable discipline was rightly refused by the trial court.[1]

---

1. We also note that whether appellant used reasonable discipline was not fairly raised by the evidence. The record reflects that appellant's initial slap was prompted not by the exercise on his part of discipline, but was the result of a verbal altercation between cousins. Thus, the subject matter of the blow inflicted

We turn now to the contention by appellant that the court erred in denying the requested instruction on self-defense. As defense counsel noted at trial, "the threshold question is whether the first act [the slap] was a proper disciplinary act." (Record at 98.) As such, counsel requested that the jury be instructed "If you find that it [the slap] is a proper disciplinary act, then you may consider that he acted in self-defense when she reacted." (Record at 98.)[2] Since we have already found the "reasonable discipline" issue not fairly raised by the evidence, we are constrained to find the same with respect to self-defense. Unless the jury could find that appellant's slap was an exercise of reasonable discipline, self-defense cannot be at issue because appellant was the first aggressor. It is fundamental that when one is the aggressor in an altercation, he cannot rely upon the right of self-defense to justify his first use of force. *See* District of Columbia Criminal Jury Instructions, § 5.17. *See also Laney v. United States,* 54 U.S.App.D.C. 56, 294 F. 412 (1923). Therefore, the trial court did not err in refusing to give such an instruction.

## II

Appellant also argues that the prosecutor impermissibly commented on his failure to include in a post-arrest statement to police a matter about which he testified later at trial. During the prosecutor's cross-examination of appellant, the following dialogue occurred:

Q. Isn't it a fact that after you were arrested in relation to this incident that you told Officer Gray—you remember Officer Gray, you saw him testify here—that you had struck Ms. Buford?

A. Did I tell him that?

Q. Yes. Isn't it a fact that you told him that?

A. (No audible response.)

Q. Did you tell Officer Gray that she had picked up an ashtray and swung it at you, at that time?

A. No, I didn't.

Q. So, you didn't tell Officer Gray that that's why you hit her?

[Counsel]: Objection, Your Honor.

After a brief conference at the bench, the prosecutor withdrew the question. (Record at 86.)

It is basic that a prior inconsistent statement may be used to impeach the credibility of a witness' testimony. 3A J. WIGMORE, EVIDENCE § 1040 (Chadbourn rev. 1970). When an accused in a prior statement "fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent for impeachment purposes." C. McCORMICK, EVIDENCE § 835 at 68 (2d ed. 1972).

In *Hill v. United States,* D.C.App., 404 A.2d 525, 531 (1979), this court adopted that standard and set out the procedure to be used when seeking to impeach a witness with the use of such a prior statement:

The pretrial statement to be admissible for impeachment purposes should purport to address the facts surrounding the commission of the alleged offense. The prosecutor, as here, must apprise the trial court of the omitted facts to be relied upon as showing inconsistency and the court must consider whether such facts are sufficiently material that the failure to have mentioned them amounts to inconsistency.

*Accord, Sampson v. United States,* D.C. App., 407 A.2d 574, 578 (1979). Here, the prosecutor did not follow the procedure outlined in *Hill* but sought to impeach appellant without giving the trial court the opportunity to rule on whether a "threshold inconsistency" existed. Absent this finding by the trial court, appellant's silence may not have the probative value which would allow its admission at trial for impeachment purposes. *See United States v. Hale,* 422

---

by appellant was outside what is normally considered the realm of parental discipline.

2. The defense testimony was that after appellant slapped the complainant she picked up a

heavy glass ashtray whereupon appellant punched her with his fist, blackening her eye and bruising her face.

U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975); *Hill, supra* at 532. Accordingly, the prosecutor's impeachment in this case was in error.

Upon examination of the record, however, we cannot conclude that the error "had substantial influence" to mandate reversal in this case. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The prosecutor did not substantially use appellant's prior statement to undermine his credibility. At the conclusion of the bench conference on this matter, the prosecutor announced in front of the jury that he was withdrawing his last question. (Record at 86.) No mention was made of the impeachment during the prosecutor's closing argument, and no rebuttal testimony was presented on this point. *Compare Sampson v. United States, supra.* Thus, the effort to impeach was an abortive one and the impact on the jury was quite attenuated.[3] We conclude that the passing reference by the prosecutor to appellant's prior inconsistent statement would not have substantially swayed the jury. *See Kotteakos, supra.*

*Affirmed.*

---

**3.** We note that defense counsel made no motion to strike appellant's previous answer or for a curative instruction at that time.