**Jacqueline NEWBY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 98–CF–1125.

District of Columbia Court of Appeals.

Argued Sept. 21, 2000.

Decided May 9, 2002.

David A. Singleton, Public Defender Service, with whom James Klein and Julie Brain, Public Defender Service, were on the brief, for appellant.

Ann K.H. Simon, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, FARRELL, and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

In this appeal, appellant Jacqueline Newby contends that a parent may not be convicted of the offense of simple assault for using excessive force to discipline her minor child, at least not unless the government proves that the parent acted with malice. Although this proposition suggests broader questions concerning the limits placed by the criminal law on the use of corporal punishment in parental discipline, we are not persuaded by the specific arguments that appellant presents. We hold that the government may prosecute parent-child assaults as violations of the simple assault statute, and that the government does not need to prove malice in order to overcome the parental discipline defense and secure a conviction. We therefore affirm appellant's conviction in this case.

## I.

On a warm Monday afternoon in September, appellant brought her children to a park in southwest Washington, D.C., for a family outing. Before long a commotion broke out, attracting the attention of witnesses who were picnicking nearby. These witnesses watched as appellant, screaming obscenities, pummeled and kicked her six-year-old daughter, who was crying and trying to run away. Dismayed and alarmed, the witnesses summoned the police. Appellant was arrested and charged with second degree cruelty to children, a ten-year felony. The government later dropped that charge, choosing instead to prosecute appellant on one count of simple assault, a 180–day misdemeanor. A bench trial on that charge was held before the Honorable Mildred M. Edwards.

Three eyewitnesses called by the government testified that appellant struck her daughter some ten to fifteen times on her head, neck and shoulders, and kicked her with a shod foot in the middle of her back. The beating continued after appellant knocked her daughter to the ground. The

witnesses particularly remembered seeing appellant smack her daughter's face with the back of her hand, on which appellant was wearing several prominent rings.

Testifying in her own defense, appellant explained that her daughter had been misbehaving all afternoon and was especially wild and overexcited at the picnic area. Appellant feared that the child, who was running around in a "rage," would fall in the Potomac River, burn herself on a hot barbecue grill, or run in the path of a car. After exhausting non-violent efforts to distract and quiet her daughter, appellant said, she grabbed and hit the child. Appellant also kicked her in the back of her leg, in order, she said, to stop her from running away toward the river. Appellant admitted that she was angry and had lost control of the situation. She insisted, however, that she never intended to hurt her daughter, but only to discipline her for her own good. Appellant testified, without contradiction, that the child suffered no physical injuries.

Appellant's counsel made timely motions for a judgment of acquittal, submitting on the record without identifying any particular reason why the evidence was insufficient as a matter of law. Thereafter, in closing argument, counsel argued that appellant was privileged to employ reasonable force "for the purpose" of parental discipline, so long as she did not use "excessive" force and cause her daughter serious physical injury.

Concluding that the government had met its "burden to show beyond a reasonable doubt that the defendant's conduct was not justified by the exercise of reasonable parental discipline," Judge Edwards found appellant guilty of simple assault. Crediting the testimony of the government's "reasonable eyewitnesses," the judge rejected appellant's claim that she had administered reasonable discipline. Rather, Judge Edwards found, appellant manifestly developed "a pretty high level of anger" when her unruly daughter continued to disobey her, "cross[ed] the line into a wilful display of anger at the child, .... lost it with [her daughter] and ... beat [her]."

## II.

Appellant makes two arguments for reversal of her conviction. First, she argues that the misdemeanor simple assault statute, D.C.Code § 22–404(a) (2001), does not apply at all to assaults by parents on their own children. Appellant argues that parent-child assaults may be prosecuted only under the felony cruelty to children statute, D.C.Code § 22–1101 (2001). Thus, appellant contends, the information in this case fails to state an offense.

Second, and alternatively, appellant argues that even if D.C.Code § 22–404(a) is applicable to parent-child assaults, the government must prove that a parent acted with malice in order to overcome the "parental discipline" defense. Appellant contends that the government failed to prove malice in this case, and that the evidence therefore was insufficient to support her conviction.

The government argues that appellant forfeited her first argument by not making it to the trial court, and that in any event, the simple assault statute does not contain any exception, express or implied, for assaults by parents on their children. As to appellant's second argument, the government acknowledges the parental discipline defense to a charge of simple assault, but argues that it may overcome that defense without having to show malice, by proving either lack of a genuine disciplinary purpose or the use of unreasonable force.

We conclude that appellant preserved both her claims for full appellate review, though she did not raise either one of them with specificity in the trial court, because

each claim is in reality a challenge to the sufficiency of the evidence to sustain her conviction. The scope of our review is not limited to plain error. On the merits, however, we reject appellant's contentions and agree with the government. We hold that the simple assault statute, D.C.Code § 22–404(a), applies to crimes by parents against their own children. We further hold that the government is not obliged to prove malice in order to defeat the parental discipline defense. The government may refute that defense by proving that the parent's purpose in resorting to force against her child was not disciplinary, or that the force she used was unreasonable.

## A.

■ In the trial court, appellant never suggested that the assault statute did not apply to her, or that if it did, the government had to prove she acted with malice. As a general proposition, "[o]bjections must be made with reasonable specificity; the [trial] judge must be fairly apprised as to the question on which he is being asked to rule." *Hunter v. United States*, 606 A.2d 139, 144 (D.C.1992). "Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal." *Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) (footnotes omitted). Thus the question naturally arises whether appellant forfeited her claims, in which case she can obtain relief in this court only if she demonstrates plain error. *See* Super. Ct.Crim. R. 52(b); *United*

States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Nixon v. United States*, 728 A.2d 582, 587 (D.C. 1999). The test for plain error is a stringent one that the appellant in this case cannot hope to meet, if only because the errors she asserts are far indeed from being "clear" or "obvious." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770; *Nixon*, 728 A.2d at 587.[1]

■ Appellant denies that she forfeited her claims by not presenting them to the trial court. She argues that, properly understood, each of her claims is simply a challenge to the sufficiency of the evidence to sustain her conviction. She preserved those challenges, she argues, when she made a general motion at the close of all the evidence for a judgment of acquittal pursuant to Super. Ct.Crim. R. 29(a).

We are persuaded that appellant is correct.

■ In contrast to the general requirement that objections at trial be made with "reasonable specificity" and "precision," this jurisdiction has adhered to the rule that "the grounds for a motion pursuant to Rule 29 need not be stated with specificity unless the prosecutor so requests." *Abdulshakur v. District of Columbia*, 589 A.2d 1258, 1264 (D.C.1991) (citations omitted). This rule is of ancient lineage in the federal courts, *see United States v. Jones*, 174 F.2d 746, 748 (7th Cir.1949), where it has survived despite being in conflict with the plain error rule. *See, e.g., United States v. Hammoude*, 311 U.S.App.D.C. 145, 148, 51 F.3d 288, 291

---

1. Under the plain error test, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *Olano*, 507 U.S. at 732, 113 S.Ct. 1770). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544 (internal quotation marks and citations omitted).

(1995); *United States v. Milton,* 303 U.S.App.D.C. 386, 392, 8 F.3d 39, 45 (1993). Even though a general motion for acquittal is "broadly stated, without specific grounds," it is deemed "sufficient to preserve the full range of challenges" to the sufficiency of the evidence.[2] *Hammoude, supra.* The rationale for perpetuating this apparent exception to the plain error rule is not clear,[3] though it may have a lot to do with considerations of courtroom efficiency and the realization that the prosecution usually knows full well what it must prove to make a prima facie case. Be that as it may, in the instant appeal the government does not dispute the settled rule that a general motion for judgment of acquittal preserves unspecified challenges to the sufficiency of the evidence. We proceed on that premise.

It follows that by moving for a judgment of acquittal at trial, appellant unquestion- ably preserved her claim that the prosecution failed to prove malice. Whatever the merits of that claim, plainly it is a challenge to the sufficiency of the evidence to sustain her conviction. The government does not argue otherwise. It is less immediately clear that appellant preserved her claim that the information fails to state an offense. As appellant thus phrases it, this claim is not a challenge to the sufficiency of the evidence. Appellant's phrasing is inapt, however. It is incontrovertible that the information, which charges that appellant "unlawfully assaulted and threatened in a menacing manner [K.N.[4]], in violation of Section 22–504, District of Columbia Code," does state an offense, *viz.,* the offense of simple assault. Shorn of its misleading characterization, appellant's claim is simply that the trial court was required to acquit her of that offense because the government did not contest the evidence

---

**2.** If the defense fails to make even a general motion for a judgment of acquittal in a jury trial, on the other hand, then the plain error test of Rule 52(b) will govern review of the sufficiency of the evidence on appeal. *See Richardson v. United States,* 276 A.2d 237, 238 (D.C.1971). It is not apparent why a motion for acquittal that specifies no grounds at all deserves more lenient treatment on appeal. Curiously, in a non-jury proceeding— such as was the present case, though appellant does not make anything of that fact— sufficiency challenges may be preserved whether or not the defense raises them at trial. *See Abdulshakur,* 589 A.2d at 1264 n. 8 (stating that motion is "apparently" unnecessary in bench trial) (citing *In re J.N.H.,* 293 A.2d 878, 880 (D.C.1972)); *United States v. Whitlock,* 214 U.S.App.D.C. 151, 154 n. 24, 663 F.2d 1094, 1097 n. 24 (1980) (Robinson, J.). It is said that in a bench trial "[t]he plea of not guilty asks the court for a judgment of acquittal, and a motion to the same end is not necessary." *Hall v. United States,* 286 F.2d 676, 677 (5th Cir.1960) (citation omitted). The same could be said with equal plausibility of a not guilty plea in a jury trial, so the reason for treating jury trials differently from bench trials in this respect is decidedly murky. All in all, the rules in this area might benefit from rethinking, but we leave that endeavor to another day.

**3.** Nor is it. clear what standard of review applies if, as envisioned in *Abdulshakur, supra,* the prosecutor requests the defense to specify the grounds of a Rule 29 motion and the defense declines to do so. Along with numerous other federal courts, the D.C. Circuit "review[s] an appellant's sufficiency-of-the-evidence challenge for plain error when a motion for judgment of acquittal was based on specific (and different) grounds." *United States v. Spinner,* 332 U.S.App.D.C. 1, 6, 152 F.3d 950, 955 (1998) (citation omitted). In *Abdulshakur, supra,* this court left open whether it would follow this forfeiture rule. *But see Davis v. United States,* 367 A.2d 1254, 1268–69 (D.C.1976) (holding that where defendant moved for judgment of acquittal on specified grounds without mentioning government's failure to prove venue, defendant has not preserved his venue objection, even though such an objection is preserved by a general motion that specifies no particular grounds).

**4.** We use initials in lieu of the name of appellant's daughter.

that the putative victim of the assault was appellant's own minor child. Whatever the merits of that claim, at bottom it too is nothing more than what the government itself calls in its brief "a garden-variety insufficiency argument."

Appellant's claims are preserved. The claims turn on pure questions of law: whether the simple assault statute applies to parent-child assaults at all, and whether the government must prove malice to overcome the assertion of the parental discipline defense. Our review of those questions is *de novo*.

**B.**

Novel though it is, appellant's claim that parent-child assaults may not be prosecuted as violations of the simple assault statute, but only as violations of the cruelty to children statute, does not persuade us.

The simple assault statute has been on the books for over a hundred years, from 1901, when Congress codified the common law of the District of Columbia,[5] to the present day. The statute provides that "[w]hoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than $1,000 or be imprisoned not more than 180 days, or both." D.C.Code § 22–404(a) (2001). This language makes no exceptions; it applies to parent-child assaults as to any other assaults. It is true that the statute admits of common law defenses, including the "parental discipline" privilege discussed in the next section of this opinion. But the very existence of that qualified privilege confirms that the (now-codified) common law offense of assault encompassed unjustified assaults by parents on their children. Like the plain words of the statute, nothing in the relevant common law or more than a century of case law remotely sug-

gests that the simple assault statute does not apply to parent-child assaults. *Cf. Reigle v. United States,* 194 A.2d 660, 661 (D.C.1963) (affirming father's conviction of simple assault for striking his nineteen-year-old son, where jury rejected father's defense that he was "administering reasonable parental authority and proper correction"); *see also Robinson v. United States,* 317 A.2d 508, 514 (D.C.1974) (affirming convictions of assault with a dangerous weapon on three-year-old child by defendant acting *in loco parentis* ). Unambiguous as the statutory language is, we have no occasion to examine its legislative history for guidance. However, we add that nothing in the legislative history of the 1901 legislation indicates that Congress intended to exclude parent-child assaults from the law's sway when it merely codified the common law offense.

Appellant theorizes, however, that when Congress enacted the original cruelty to children law some fifteen years earlier, in 1885,[6] it intended that all prosecutions of parents for the use of unlawful force against their children would be brought under that statutory provision. Appellant argues that the 1885 statute codified and hence replaced the common law crime of parent-child assaults. This thesis suffers from manifest defects. To begin with, it finds no support in the statutory language. To quote the pertinent portion of the current statute (which for the present purpose does not differ materially from the original 1885 provision, though it now incorporates a specific *mens rea* element and divides the offense into first and second degrees), "a person" commits the crime of cruelty to children in either the first or second degree if that person "intentionally, knowingly, or recklessly tortures, beats, or otherwise willfully maltreats a child ... or engages in conduct

---

5. *See* 31 Stat. 1322, ch. 854, § 806 (1901).

6. *See* 23 Stat. 303, ch. 58, § 3 (1885).

which creates a grave risk of bodily injury to a child...." D.C.Code § 22–1101(a). Nothing in this language implies that the cruelty to children statute precludes the prosecution of parents for simple assault or any other criminal offense. Indeed, the cruelty to children statute does not even mention parents or others acting in a parental capacity. Although the cruelty to children statute and the simple assault statute may overlap in their application to some crimes against children, the statutes "are fully capable of coexisting," for there is no "positive repugnancy between the provisions." *United States v. Batchelder,* 442 U.S. 114, 122, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (internal quotation marks and citation omitted). "[W]hen an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* at 123–24, 99 S.Ct. 2198 (citations omitted). *Accord, Caldwell v. United States,* 595 A.2d 961, 965 (D.C.1991). "In the absence of an express statement of congressional intent, the courts are obliged to permit enforcement of both statutes." *United States v. Young,* 376 A.2d 809, 813 (D.C. 1977) (citations omitted).

Furthermore, the legislative history contradicts appellant's claim that Congress intended to codify the common law when it enacted the new statutory offense of cruel-

ty to children in 1885. Rather, the Senate Report accompanying the legislation explains, "[t]he penal provisions of this bill are merely a condensation of the laws upon the same subject which have been in force in various States of the Union, and especially in the State of New York, for several years past." S.Rep. No. 94, 48th Cong., 1st Sess., at 1 (1884). Nor does the legislative history disclose any intention to supplant the relevant common law, under which, the Senate Report observed, "as matters now stand," a child's custodian could be convicted of "assault and battery." *Id.* at 2.[7] Rather, according to the Senate Report, the new statutory provision making it a crime to "torture, cruelly beat, abuse, or otherwise willfully maltreat" any child had a more limited object:

> The provision in question merely forbids and punishes torture and cruelty; and the police records of recent years show some cases of cruelties inflicted upon children in this District so revolting that "torture" is no more than an appropriate descriptive term for the offense. *It is this class of cases which the provision is specially designed to meet,* and it has been the law in regard to dumb animals since 1871.[8]

*Id.* (emphasis added). Thus, while it is true that Congress aimed at evils inflicted on children most commonly by parents or guardians,[9] Congress did not intend to oc-

---

**7.** There also is nothing to indicate that in 1885 Congress sought to alter the parental discipline privilege that was recognized at common law. While the scope of that privilege is not discussed in the legislative history of the cruelty to children statute, the Senate Report does comment that "[t]here is nothing in this provision which can be construed to interfere in the slightest degree with the due exercise of parental discipline, which is properly regarded as outside the range of legislative regulation." *Id.* at 2.

**8.** The criminal cruelty to children provisions enacted in 1885 were part of a larger bill that also extended to children the benefits of exist-

ing statutes for the prevention of cruelty to animals. Among other things, Congress renamed the Association for the Prevention of Cruelty to Animals the "Washington Humane Society," and authorized it to "prefer complaints, before any court in the District of Columbia having jurisdiction, for the violation of any law relating to or affecting the protection of children in said District." 23 Stat. 303, ch. 58, § 1 (1885).

**9.** In support of the new law for the District, the Senate Report mentions that state child cruelty laws "have proved very beneficial in the protection of young children from many of the cruelties to which experience shows

cupy the field or preclude prosecutions of parents for assault.

### C.

■ We turn to appellant's argument that her assault conviction must be reversed because the government did not prove that she acted out of malice when she punished her daughter. By the term "malice" in this context, appellant means the state of mind that this court described when it construed the offense of cruelty to children in *Carson v. United States,* 556 A.2d 1076, 1079 (D.C.1989): "a parent acts with malice when a parent acts out of a *desire to inflict pain* rather than out of genuine effort to correct the child, or when the parent, in a genuine effort to correct the child, acts with a *conscious disregard* that serious harm will result." (Emphasis supplied.) Malice may or may not continue to be an element of cruelty to children,[10] but the government does not need to prove malice to make out a *prima facie* case of the general intent crime of simple assault. *See Macklin v. United States,* 733 A.2d 962, 964 (D.C.1999). Appellant argues, however, that the government was obliged to prove malice to overcome her affirmative defense, the so-called parental discipline defense.

A parent's privilege to use reasonable force to discipline her minor child without being subjected to criminal liability for battery or assault is rooted in the common law, where it has a long pedigree. Blackstone, for example, deemed it settled that "battery is, in some cases, justifiable or lawful; as where one who hath authority, a parent or a master, gives moderate correc-

tion to his child, his scholar, or his apprentice." 2 WILLIAM BLACKSTONE, COMMENTARIES *120. The privilege is recognized throughout the United States. *See* Kandice K. Johnson, *Crime or Punishment: The Parental Corporal Punishment Defense—Reasonable and Necessary, or Excused Abuse?,* 1998 U. ILL. L.REV. 413, 435–36 (hereinafter Johnson); Monrad G. Paulsen, *The Legal Framework for Child Protection,* 66 COLUM. L.REV. 679, 686–88 (1966) (hereinafter Paulsen). Although some jurisdictions have embodied the parental discipline defense in statutes, often with refinements, it remains a common law defense in the District of Columbia. *See, e.g., Martin v. United States,* 452 A.2d 360, 362 (D.C.1982); *Reigle,* 194 A.2d at 661; STANDARDIZED CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.06 (4th ed., 1996 Supp.) (hereinafter CRIMINAL JURY INSTRUCTIONS).

After appellant testified that her sole intent was to discipline her six-year-old daughter and that the child suffered "no injuries," the government's burden was to disprove appellant's parental discipline defense beyond a reasonable doubt. The trial court so understood. This does not mean, however, that the government necessarily had to prove malice in order to secure a conviction of appellant for simple assault. What the government had to prove depends on how the parental discipline defense is defined. Therein, for appellant, lies the rub.

The precise contours of the parental discipline defense have not been articulated fully in the case law of this jurisdiction. In *Reigle,* the court merely referred

---

they are often subjected at the hands of vicious and criminal parents, or, more frequently, at the hands of other persons into whose custody they may have fallen as hopeless waifs and orphans." *Id.* at 1.

**10.** In *Carson,* this court held that malice was an element of cruelty to children as that of-

fense was described before 1994, when the statute was amended to specify that the crime could be committed "intentionally, knowingly or recklessly." *See* D.C.Code § 22–1101 (2001). We have not construed this current *mens rea* component (and that question is not before us in this case).

without elaboration to the defendant's unsuccessful claim that he was "administering reasonable parental authority and proper correction." 194 A.2d at 661. In *Martin*, the court stated that there must be evidence "that the aggressor stood *in loco parentis* to the child, and ... that reasonable discipline was used under the circumstances." 452 A.2d at 362.[11] These characterizations of the parental discipline defense, summary though they are, emphasize not the non-malicious state of mind of the parent, but rather the purpose and the reasonableness of the force used. The widely accepted CRIMINAL JURY INSTRUCTIONS likewise states that "[t]o be justified, the force must have been used for the purpose of exercising parental discipline and must be reasonable."[12]

■ This basic conception of the parental discipline defense is reinforced by decisions construing the common law of Maryland, to which we look for guidance when our own precedent is not dispositive.[13] The leading decision of the Maryland Court of Appeals stated in 1978 that "[s]o long as the chastisement was moderate and reasonable, in light of the age, condition and disposition of the child, and other surrounding circumstances, the parent or custodian would not incur criminal liability for assault and battery or a similar offense." *Bowers v. State*, 283 Md. 115, 389 A.2d 341, 348 (1978) (citations omitted). But, the court continued, "a parent was not permitted under the common law to resort to punishment which would exceed 'that properly required for disciplinary purposes' or which would extend beyond the bounds of moderation. 'Excessive or cruel' conduct was universally prohibited." *Id.* (quoting *Fabian*, 201 A.2d at 518). A few years after the decision in *Bowers*, Judge Moylan of the Maryland Court of Special Appeals identified "two clear limitations" in the common law parental discipline defense. *Anderson v. State*, 61 Md.App. 436, 487 A.2d 294, 298 (1985). The first limitation "is that the force truly be used in the exercise of domestic authority by way of punishing or disciplining the child—for the betterment

---

11. In support, the court cited *Fabian v. State*, 235 Md. 306, 201 A.2d 511, 518 (1964), for the proposition that "even assuming that one stands *in loco parentis* to a child, that relationship would not be a defense where discipline exceeds the bounds of due moderation." *Martin*, 452 A.2d at 362.

12. The full statement of the parental discipline defense that is set forth in the jury instruction on assault is as follows:

The parent of a minor child is justified in using a reasonable amount of force upon the child for the purpose of safeguarding or promoting the child's welfare, including the prevention or punishment of his/her misconduct. Thus, the parent may punish the child for wrongdoing and not be guilty of assault (1) if the punishment is inflicted out of a genuine effort to correct the child, and (2) if the punishment thus inflicted is not excessive in view of all the circumstances, including the child's age, health, mental and emotional development, alleged misconduct on this and earlier occasions, the kind of punishment used, the nature and location of the injuries inflicted, and any other evidence that you deem relevant.

To be justified, the force must have been used for the purpose of exercising parental discipline and must be reasonable. The defendant is not required to prove that his/her conduct was a justifiable exercise of reasonable parental discipline. Rather, the government must prove beyond a reasonable doubt that the defendant's conduct was not so justified. CRIMINAL JURY INSTRUCTIONS No. 4.06.

13. "The common law of the District of Columbia encompasses all common law in force in Maryland in 1801, unless expressly repealed or modified." *United States v. Jackson*, 528 A.2d 1211, 1215 (D.C.1987) (citations omitted). *See* D.C.Code § 45–401 (2001). As a result, "Maryland authorities expounding the common law of that state constitute powerful precedent in this jurisdiction," *Little v. United States*, 709 A.2d 708, 711 (D.C.1998).

of the child or promotion of the child's welfare—and not be a gratuitous attack." *Id.* (footnote omitted). The second limitation "is that the amount of force used be moderate and reasonable." *Id.* "The use of immoderate force is the thing that defeats the parental privilege, even where otherwise applicable." *Id.* at 299.

The District of Columbia and Maryland cases do not support appellant's contention that under the common law, "the government [is required] to prove malice before a parent, in a parental discipline case, could be found guilty of assault and battery." Much less do the cases support appellant's extravagant assertion that "what constitutes 'reasonable' parental discipline in our jurisdiction is therefore defined solely with reference to the parent's state of mind." Rather, the government could "defeat" the parental discipline defense by proving either that the parent did not have a genuine disciplinary purpose or that the force used was immoderate or unreasonable.[14] This "reasonable force" standard for genuine parental discipline appears to be the common law rule in the majority of jurisdictions. *See Carpenter v. Commonwealth,* 186 Va. 851, 44 S.E.2d 419, 423 (1947) (noting that "the great preponderance of authority is to the effect that a parent has a right to punish a child within the bounds of moderation and reason, so long as he does it for the welfare of the child; but that if he exceeds due moderation, he becomes criminally liable").

■ We recognize that not all jurisdictions employ the reasonable force standard. In the common law of some jurisdictions, the parental discipline privilege is based on a malice standard along the lines that appellant proposes. *See* Johnson, *supra,* at 435–36; Paulsen, *supra,* at 686–87. But while this court does retain the "inherent power to alter or amend the common law," *Jackson,* 528 A.2d at 1216, we would not choose to follow the minority of courts that "hold that in the absence of malice, parents [have] almost unfettered discretion to physically dominate their children." Johnson, *supra,* at 435 (footnote omitted). As Johnson reports, replacing the reasonable force standard with a malice standard would reduce the level of protection that the criminal law affords children:

In jurisdictions using the malice standard or variations thereof, great deference is given to the authority of parents to raise children as they see fit. Parental authority dominates the concern for the physical well-being of the child. As such, in all but the worst cases of abuse, when the child is subjected to conduct that could or does result in death, serious injury, or disfigurement, a parent's right to discipline is given priority over the consequences to the child.

In contrast, jurisdictions not using the malice standard appear to value the well-being of the child over the authority of the parents. That is to say, because

14. Appellant points to our observation in *Carson* that Maryland's cruelty to children statute, which expressly incorporated a malice standard, "is a codification of Maryland common law." 556 A.2d at 1079. Appellant also cites the statement in *Bowers* that "where corporal punishment was inflicted with 'a malicious desire to cause pain' or where it amounted to 'cruel and outrageous' treatment of the child, the chastisement was deemed unreasonable, thus defeating the parental privilege and subjecting the parent to penal sanctions in those circumstances where crim-inal liability would have existed absent the parent-child relationship." 389 A.2d at 348 (quoting *Hinkle v. State,* 127 Ind. 490, 26 N.E. 777, 778 (1891)). We do not read these isolated comments, or the opinions in *Carson* or *Bowers* in their entirety, to imply that only a showing of malice could overcome the parental discipline privilege at common law. Such an implication would be contrary to the full discussion of the privilege in *Bowers,* not to mention the weight of authority in the District of Columbia and Maryland as summarized above.

the imposed standard uses reasonableness as the guidepost, rather than a specific outside boundary, the fact finder is allowed to evaluate conduct that would not be evaluated by the fact finder under the malice standard. In jurisdictions that reject the malice standard, the range of conduct that falls outside the parameter of the defense is enlarged, parental authority is reined in, and concerns for the well-being of the child are enhanced.

Johnson, *supra*, at 436 (footnotes omitted). A malice standard for the parental discipline defense also would run counter to the public policy reflected in the child neglect and abuse law of the District. That law states that a child whose parent inflicts, or fails to make reasonable efforts to prevent the infliction of, "excessive corporal punishment" is an "abused" child entitled to legal protection. D.C.Code § 16–2301(23) (2001). Under this provision, we have stated, "a parent's right to manage a child has its limits," and corporal punishment "must be reasonable under the facts and circumstances of the case." *In re L.D.H.*, 776 A.2d 570, 575 (D.C.2001) (citations omitted). The test is an "objective" one that does not turn on the existence of parental malice. *In re S.K.*, 564 A.2d 1382, 1383 (D.C.1989). Parental good intentions do not excuse physical abuse.

▆▆ Appellant nonetheless urges adoption of a malice standard in criminal prosecutions on the ground that "a general intent mens rea in parental discipline cases would not adequately safeguard a parent's constitutional right to decide how best to raise her child without undue interference from the government." *Cf. Carson*, 556 A.2d at 1079 ("A general intent standard would too greatly invade the legitimate domestic authority of parents."). This argument is flawed in that it ignores the availability of the parental discipline defense based on a reasonableness standard and assumes that nothing less than a malice standard will do to protect the due process "right of parents to make decisions concerning the care, custody and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (citations omitted). But as the opinion in *Troxel* is careful to point out, the constitutional presumption against state intervention exists only "so long as a parent adequately cares for his or her children." *Id.* at 68, 120 S.Ct. 2054. The "state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare." *Prince v. Massachusetts*, 321 U.S. 158, 167, 64 S.Ct. 438, 88 L.Ed. 645 (1944). Constitutionally protected parental prerogatives are sufficiently respected in a criminal assault prosecution by requiring the government to overcome the parental discipline defense beyond a reasonable doubt—by proving either that the punishment was unreasonable or that it was not genuinely disciplinary—without also requiring the government to prove that the parent acted with malice toward her child.

To say that much is not to say that the common law reasonableness standard is necessarily beyond criticism. One arguable shortcoming is that "[w]ith 'reasonableness' as their only guide, parents have little guidance as to the limits of a lawful physical interaction with their children, and fact finders are left to define the privilege on a case-by-case basis." Johnson, *supra*, at 467 (arguing, *inter alia*, for a legislatively drawn "bright line .... against the use of force that results in physical injury to the child," *id.* at 470). Perhaps the criminal sanction should be reserved for the most egregious cases, as Paulsen opines,[15] or should entail a height-

---

15. In Paulsen's view, "[t]he harsh remedies of    the criminal law are appropriate only in se-

ened *mens rea* requirement—if not malice, then perhaps a lesser degree of recklessness. *Cf. State v. Wilder*, 748 A.2d 444, 455 (Me.2000) (holding that to overcome statutory parental discipline defense, "the State must prove beyond a reasonable doubt that: (1) the degree of physical force that the parent used caused physical injury greater than transient pain and/or temporary red marks or bruises; and (2) the parent's belief that such physical force was necessary to control the child's misconduct was grossly deviant from what a reasonable and prudent parent would believe necessary in the same situation"). Refinements to the common law reasonableness standard implicate policy issues that are mainly for the legislative branch rather than the courts, however, and no question of judicial tinkering with that standard is presented in the instant appeal.

We hold that the government was not required to prove malice in order to rebut appellant's assertion of the parental discipline defense. We therefore reject appellant's argument that her conviction must be overturned because there was insufficient evidence of malice.

### III.

For the foregoing reasons, appellant's conviction of simple assault is affirmed.

*So ordered.*

vere cases, cases which indicate that further harm may be done to others, cases which call for vengeance (if that call should ever be heeded), or cases which so disturb the community's sense of security that the events cannot go unremarked." Paulsen, *supra*, at 692.