**Carl LONGUS, Appellant**

v.

**UNITED STATES, Appellee.**

**No. 06–CM–252.**

District of Columbia Court of Appeals.

Argued Sept. 27, 2007.
Decided Nov. 15, 2007.

Marie L. Park, San Francisco, CA, appointed by the court, for appellant.

Perham Gorji, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, Roy W. McLeese III and Youli Lee, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant Carl Longus appeals from his conviction for simple assault, which arose from an incident between him and his teenage daughter on April 28, 2005. He was arrested two months later on a warrant obtained by a police officer who witnessed the incident. At the bench trial, appellant raised the parental discipline privilege. The trial court concluded that the prosecution rebutted the defense beyond a reasonable doubt and held that appellant's use of force was unreasonable. On appeal, appellant argues, as he did at trial, that the government's evidence was insufficient to refute the defense. We re-

verse because of the lack of severity of the disciplinary force and absence of any evidence as to psychological trauma, or physical injury and remand with directions to enter a judgment of acquittal.[1]

## I.

## Background

The events leading to appellant's conviction took place on April 28, 2005. On that afternoon, appellant left work early to pick up his daughter J.C., then thirteen years-old, from Deal Junior High School. While en route to Deal Junior High, J.C. called appellant to ask for permission to attend an after-school basketball game. Because appellant and J.C.'s mother had grounded J.C. for prior misbehavior, appellant told J.C. that she could not attend the basketball game. When appellant arrived at the school, he did not find J.C. waiting for him. After waiting for her in his car, appellant asked the school to page J.C., and appellant also looked for her at the basketball game and around the school. Appellant searched for J.C. for approximately a half hour before calling J.C.'s mother. J.C.'s mother, also unaware of J.C.'s whereabouts, finally located J.C. at Janney Elementary School ("Janney") in northwest Washington. Despite appellant's instructions to stay at Deal Junior High until he arrived, J.C. had deliberately disobeyed appellant and gone to Janney to meet a friend.[2]

When appellant arrived at Janney and did not find J.C. waiting for him at the front of the school, he again called J.C.'s mother, who suggested that appellant check the back of the school. Appellant found J.C. behind Janney, and according to appellant, J.C. was nervous and upset. Appellant and J.C. exchanged words, and appellant slapped J.C. on the back of the head with an open palm as they headed to appellant's car. Metropolitan Police Department Officer Laverne Green[3] saw appellant strike J.C. on the back of the head. J.C. testified that appellant's actions caused no pain or injuries.

Officer Green and Glenson Sitney, executive director of the Janney after-school program, followed appellant and J.C. as they walked to the car, during which time J.C. told appellant that he did not love her anymore.[4] In response, appellant turned around and grabbed J.C.'s clothing near her neck, causing her to step backwards into two double doors and to briefly lose her breath.[5] Sitney, who witnessed the incident, acknowledged that appellant did not push J.C. Instead, J.C. backed away from appellant as he turned around to grab her, as if she was trying to avoid appellant. Further, Sitney testified that appellant never struck J.C., but "just

1. Because we conclude, as a matter of law, that the government produced insufficient evidence to rebut appellant's defense of parental discipline, we need not address appellant's contention that the trial court improperly interpreted the common law definitions of assault and the parental discipline privilege.

2. When asked what happened when her father arrived at Janney Elementary School, J.C. testified that he was angry and observed that "it's the simple fact that he told me to do something. I didn't do it and he was worried about where I was...."

3. Officer Green, who worked in security and administration at Janney, was off duty on April 28, 2005, and was at the school to pick up her child.

4. At this point, appellant and J.C. were near an alcove with a few steps leading to a doorway to the school building. Sitney described it as "two or three steps, and then it goes into a little alcove where the doorway is to go into the building...."

5. J.C. testified that she was able to breathe, but her breath was "cut a little short."

grabbed her clothing." Again, J.C. testified that she did not suffer any pain or injuries as a result of appellant's conduct.

After this incident, Sitney requested Officer Green's assistance,[6] and the two proceeded to appellant's car. Officer Green identified herself to appellant and told him that another parent said appellant slapped J.C. in the face. Appellant denied slapping J.C., apologized for the disturbance, and drove away from the school with his daughter.

Appellant testified that he hit J.C. on the back of the head to discipline her and as a "let's go" type motion. As for the incident near the steps, appellant explained that he "wanted to correct her as far as letting her know that I will always love you so I may have been, it may have been intimidating to her...." Appellant also recounted his growing frustration with his daughter, which stemmed from her failing grades and at least one other incident where appellant arrived to pick up J.C. and was initially unable to locate her. Consistent with J.C.'s testimony, appellant stated that J.C. regularly skipped class at Deal Junior High, which in turn led to a sharp decline in her grades. Appellant testified that he and J.C.'s mother hired a math tutor to help boost J.C.'s grades, but J.C. went to the tutor only once or twice. In an incident approximately one month prior to the present incident, J.C. skipped dance class and instead took public transportation to Pentagon City, knowing she was forbidden from doing so. Although J.C. planned to return to dance class before she was scheduled to be picked up, appellant instead arrived early and could not find J.C. As a result of these incidents,

appellant and J.C.'s mother "grounded" J.C., i.e., prohibiting her from doing anything other than homework after school.

## II.

A defendant who is charged with assault may raise the privilege of parental discipline. See Lee v. United States, 831 A.2d 378, 380 (D.C.2003). To establish this defense, the defendant's use of force must have been for the purpose of exercising parental discipline and the force must have been reasonable. Id. (citing Newby v. United States, 797 A.2d 1233, 1235 (D.C. 2002)). Once the defendant raises this defense, the government bears the burden of refuting it "by proving beyond a reasonable doubt that 'the parent's purpose in resorting to force against her child was not disciplinary, or that the force she used was unreasonable.' " Id. at 380–81 (quoting Newby, 797 A.2d at 1237). In a parental discipline context, "[s]light evidence is not sufficient evidence; a mere modicum cannot rationally support a conviction beyond a reasonable doubt." Powell v. United States, 916 A.2d 890, 894 (D.C.2006) (citation and internal quotation marks omitted).

The government's evidence in this case fails, as a matter of law, to establish beyond a reasonable doubt that the force used was unreasonable. At the outset, we note that the trial court assumed a disciplinary purpose and based her decision instead on her finding that the force used was unreasonable:

> I know that the defendant is, or made the argument that he used force for the purpose of disciplining his daughter. And of course, it needs to be some showing with that defense of parental disci-

---

6. The testimony of Officer Green and Sitney is inconsistent. Officer Green testified that Sitney requested her assistance prior to appellant striking J.C. on the back of the head, while Sitney testified that he asked Officer Green to intervene after the incident on the steps. If Officer Green did in fact intervene after this incident, it is unclear from the trial transcript how she witnessed appellant striking J.C. on the back of the head.

pline, that the force was used for the purpose of exercising parental discipline. But whatever the force is, it must be reasonable under the circumstances.

In an appeal involving the parental discipline privilege, the defendant's testimony can be critical on the issue of reasonable doubt where the parent testifies to the discipline he administered and that testimony is not disbelieved by the judge as a fact finder—particularly in a case like this, where the parent's testimony was consistent with the government's evidence. A parent's testimony can also be useful to elucidate the relationships among family members and the context in which the confrontation arose. Here, the trial judge did not disbelieve appellant's testimony, so we must consider it as part of the factual calculus of the parental privilege defense that the government had to overcome.

 Appellant testified that when he slapped J.C. on the back of the head, he did so to discipline her and to urge her to the car. Similarly, appellant testified that when he grabbed J.C. by the shirt, he did so to correct her and to tell her "I do love you and don't ever think I don't." The trial court recognized that appellant was "probably frustrated by his daughter's behavior" and "fearful of her behavior." Given this testimony, it was not unreasonable for the trial court to find—or assume— that a disciplinary purpose existed. Nor does evidence that appellant was angry make the finding of disciplinary purpose erroneous. *See Florence v. United States*, 906 A.2d 889, 895 (D.C.2006).[7]

Turning to the matter of whether the discipline was reasonable, it is helpful to look to the jury instruction for the parental discipline defense in the Criminal Jury Instructions for the District of Columbia.[8] *See* Criminal Jury Instructions for the District of Columbia, No. 4.06 (4th ed. 1993) (cited in *Florence*, 906 A.2d at 894–95 n. 5). Consistent with that instruction, the trial court could recognize that when determining whether the use of force was reasonable, the fact finder may consider the child's age, health, mental and emotional states, and the child's past and present conduct. Exposure to a substantial risk of

---

7. This is not to say that anger is irrelevant to a finding that a parent lacked a disciplinary purpose. To the contrary, the parent's anger is relevant both to whether the parent had a disciplinary purpose and to whether the discipline imposed was reasonable. *Id.* at 895. We merely find that where, as here, there is evidence that the parent had a disciplinary purpose, a finder of fact is not required to find beyond a reasonable doubt that the parent lacked a disciplinary purpose merely because there is testimony that the parent was angry.

8. The parental discipline defense is set forth in the jury instruction on assault as follows:

> The parent of a minor child is justified in using a reasonable amount of force upon the child for the purpose of safeguarding or promoting the child's welfare, including the prevention or punishment of his/her misconduct. Thus, the parent may punish the child for wrongdoing and not be guilty of assault (1) if the punishment is inflicted out of a genuine effort to correct the child, and (2) if the punishment thus inflicted is not excessive in view of all the circumstances, including the child's age, health, mental and emotional development, alleged misconduct on this and earlier occasions, the kind of punishment used, the nature and location of the injuries inflicted, and any other evidence that you deem relevant.

> To be justified, the force must have been used for the purpose of exercising parental discipline and must be reasonable. The defendant is not required to prove that his/her conduct was a justifiable exercise of reasonable parental discipline. Rather, the government must prove beyond a reasonable doubt that the defendant's conduct was not so justified.

> Criminal Jury Instructions for the District of Columbia, No. 4.06 (4th ed. 1993) (cited in *Florence*, 906 A.2d at 894–95 n. 5).

significant physical injury or significant pain may also be relevant in determining whether a parent used excessive force under the circumstances. *See Powell,* 916 A.2d at 895 (Glickman, J., concurring).

Sitney's testimony is consistent with J.C.'s testimony. Although Sitney initially testified that appellant grabbed J.C. and "pushed her up against the doorway," Sitney clarified his characterization of the incident and testified that,

> [i]t wasn't like [appellant] pushed her into a wall. She was, like, backing up at the same time and he was going at her. So it was more of a push, push type retreat thing so she's trying to avoid, getting away from him.... But he never struck her or punched her or hit her or anything like that. He just grabbed her.

Sitney also demonstrated for the trial court that appellant grabbed J.C.'s clothing, not her neck. Moreover, and relevant to a determination of whether appellant's conduct was unreasonable, J.C. testified that she did not suffer any physical injuries from either of these incidents, and appellant's actions certainly did not expose J.C. to substantial risk of significant injury or significant pain, physical or psychological.

Accordingly, appellant's conviction for simple assault is reversed, and the case is remanded with directions to enter a judgment of acquittal.

FARRELL, Associate Judge, concurring:

This is an exceedingly close case for reversal. I say that because, on the facts presented, the trial judge reasonably could have found that in laying hands on his daughter appellant was not exercising discipline at all but rather, in angry reaction

to her utterance that he didn't "love [her] anymore" as the reason why she did not want to visit him,[1] simply "lost it" or "was out of control" (in words the trial judge used). If indeed the father was acting out of spleen, reacting viscerally to an inadequate show of appreciation or affection, that would not even fit within legitimate parental discipline. "Losing it" and acting "out of control," unlike anger justifiably provoked, *see Florence v. United States,* 906 A.2d 889, 895–96 (D.C.2006), are not manifestations of discipline being administered, even disproportionately. Lashing out is not the action of a parent *as* parent at all.

But I agree with the court that the trial judge found, or at least assumed, that appellant acted out of a genuinely perceived need to discipline the child for wayward behavior, and we could not reject that finding as a matter of law. Further, since this was not a civil neglect case but a criminal prosecution, I agree that the evidence does not permit a reasonable inference that the force he administered was so excessive as to overcome the parental defense.

---

1. It appears from the record that J.C. was not living with her father, at least not full time.